**UNITED STATES of America**

v.

**McFADDEN, Carroll Garwin aka William James aka Sunshine.**

**Appeal of Carroll Garwin McFadden.**

**No. 79–2024.**

United States Court of Appeals, Third Circuit.

Argued Feb. 12, 1980.*

Decided Sept. 15, 1980.

* The last submission from counsel was received April 22, 1980.

Sally A. Frick (argued), Pittsburgh, Pa., for appellant.

Sandra D. Jordan, Asst. U. S. Atty. (argued), Robert J. Cindrich, U. S. Atty., Frederick W. Thieman, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS, VAN DUSEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This appeal presents the problem arising when

(1) a defendant in a criminal proceeding has insisted on directing two successive court–appointed defense lawyers in legal decisions affecting his defense, threatening to sue them if his untutored legal directions are not followed and his release not secured, with the result that, at a time when the defense witness primarily relied on by defendant has been brought several hundred miles from the Danbury Correctional Institution at defendant's request and all other witnesses are available for the trial, the court decides to relieve such second lawyer;[1]

(2) during the hearing on the motion to withdraw by the second counsel appointed for defendant by the court, the defendant states that he "fires" the second counsel and will represent himself;

(3) the permissible time for trial under the Speedy Trial Act is about to expire (see 18 U.S.C. § 3161(h)(8)(A)[2]) unless the trial judge grants a continuance on his own motion, and the defendant does not join in an application for a continuance, although his withdrawing counsel suggested this (see note 10 below);

(4) the court appoints competent standby counsel to assist the difficult defendant at the trial;[3] and

(5) such defendant has been given more discovery documents than the law requires, as well as having his witnesses ready for the trial, the defendant contends on appeal that the trial judge committed reversible error by (a) not warning him more fully on the importance of counsel[4] and (b) proceeding with the trial rather than securing a third defense lawyer, which would have required a further postponement of the trial.

1. At the hearing described under part (2) of this sentence, the defendant complained that "I haven't been given a decent counsel," even though the record shows that both appointed counsel were fully qualified. The first appointed counsel was relieved at such counsel's request.

Also it is noted that the testimony of the witness brought from Danbury turned out to be so adverse to the defendant's entrapment defense that the trial judge found it necessary to make comments at sidebar to assist the defendant and his advisory counsel on the presentation of their case (see N. T. 288–290; see also note 8 below).

2. This section provides that the trial judge shall grant the continuance if he finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" (emphasis supplied).

3. See ABA Standards of Criminal Justice, The Trial Judge's Function, § 6.7. We note that the ABA Standards for the Defense Function explicitly provide that they are not intended "as criteria for judicial evaluation of the effectiveness of counsel to determine the validity of a conviction." See Standards Relating to Defense Function at p. 43, § 1.1(f), 1971 Approved Draft; cf. ABA Standards Relating to the Prosecution Function at § 1.1(e) (page 25), 1971 Approved Draft.

4. The repeated admonitions of the trial judge to pay attention to the advice of his counsel are referred to below at pages 968 and 971. Also see below at page 969 and note 11.

Defendant, Carroll G. McFadden, appeals from his conviction of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841 (1976), and of use of the telephone to distribute the heroin, in violation of 21 U.S.C. § 843 (1976). McFadden asserts that his conviction must be overturned because he was deprived of his Sixth Amendment right to assistance of counsel. He contends that he did not knowingly and intelligently waive his right to counsel at or before the time he told the court ". . . [Mr. Rossetti] is fired because I don't want him" (page 967, below) and that he was prejudiced by having the assistance of standby counsel only at trial. We believe the record justifies the conclusion of the trial judge that he was entitled, in light of all the facts and the policy of the Speedy Trial Act, to proceed with the trial, having made available to the defendant, who had "fired" his second appointed counsel and said he would represent himself (pp. 966–967 below), the standby advice of a competent trial attorney.[5]

## I.

An arrest warrant was issued for Carroll Garwin McFadden by the United States District Court for the Western District of Pennsylvania on February 16, 1979. McFadden was arrested on February 22, 1979, and appeared before a United States Magistrate on the same date at a proceeding recorded on Magistrate's Tape # 1322 (Tape Index 23). At that time the magistrate explained to McFadden the rights of one who has been accused of a crime, read the charges against McFadden and provided a copy of them to him, and explained the penalties provided for the crimes which McFadden had allegedly committed. The magistrate stated:

"Now, as I said, you have the right to be represented by counsel of your own choosing. If you are unable to afford counsel, you can request that counsel be appointed for you at the expense of the Government."

In response, McFadden requested the appointment of counsel on his behalf and executed an affidavit indicating that he was financially unable to retain an attorney. On the same day, the magistrate appointed the Federal Public Defender to represent McFadden, naming Thomas S. White as primary counsel.

An indictment charging that in May 1978 McFadden had violated the narcotics laws (see page 964, above) was filed on March 23, 1979. McFadden was arraigned before the magistrate on March 30, and entered a not guilty plea with his counsel present.[6] Shortly afterward, McFadden was returned to the United States Penitentiary at Lewisburg, Pennsylvania.[7] On April 17, 1979, White filed a motion to withdraw as counsel for McFadden. White based this motion on "irreconcilable differences" which had arisen during his meetings and correspondence with the defendant. On April 18, the magistrate entered an order allowing White to withdraw and appointing Donald D. Rossetti as counsel for McFadden. Rossetti had never met with McFadden, who was incarcerated in Lewisburg continuously from April to July. Consequently, on May 7,

---

5. The defendant had not (a) cooperated with, but attempted to direct (see note 14 below and accompanying text), two previous attorneys appointed for him under the Criminal Justice Act, whom he threatened to sue and who were permitted to withdraw, and (b) requested permission to represent himself during the trial. In *United States v. Plattner*, 330 F.2d 271 (2nd Cir. 1964), the court said at page 276:

"The right to counsel and the right to defend *pro se* in criminal cases form a single, inseparable bundle of rights, two faces of the same coin. Thus we find the choice between the two sometimes discussed in terms of a waiver of the right to counsel, and sometimes in terms of an election to have a lawyer or to defend *pro se*."

6. See Reverse of March 27, 1979 order of United States Magistrate attached to WRIT OF HABEAS CORPUS AD PROSEQUENDUM (Document No. 6 in *United States v. McFadden*, Crim. No. 79–74, W.D.Pa.).

7. McFadden was sent to Lewisburg to finish serving his sentence based on conviction for a prior offense. He had been released on parole; when he was arrested on April 22, 1979 he had violated the terms of his parole by leaving the district to which he was restricted.

1979, Rossetti filed a motion seeking to have the defendant immediately transferred to Pittsburgh so that he could consult with counsel and prepare for trial. On May 10, the district court ordered that McFadden be moved from Lewisburg to Pittsburgh on July 1, 1979, two weeks prior to the scheduled trial date. On May 16, Rossetti wrote defendant a letter, attached to this opinion as Appendix A, describing the legal situation confronting McFadden, and outlining the type of evidence which would be helpful in his defense. On June 26, pursuant to a motion by the United States Attorney, the trial was continued from July 16 to July 23.

McFadden was moved to Pittsburgh on July 1 and had his first meeting with Rossetti on July 2. Prior to this time there had been some correspondence between them. Between July 2 and July 18, Rossetti and the defendant had three additional, mostly unproductive meetings. On July 19, four days before trial, Rossetti filed a motion to withdraw as counsel for the defendant. Rossetti stated that his relationship with McFadden had deteriorated to such an extent that it would be impossible for him to represent McFadden effectively or adequately. He noted that McFadden's defense appeared to have merit and that the case held serious consequences for McFadden, and concluded that McFadden was entitled to effective representation which Rossetti could not provide.

On the scheduled trial date, July 23, 1979, Rossetti, McFadden, and Assistant United States Attorney William Webb appeared before the trial judge. The proceeding began with the following remarks:

"THE COURT: Mr. Rossetti, we have your motion to withdraw. Although it contains a good deal of serious matters concerning yourself, there is no reason here for the postponement of trial.

"Counsel has been afforded to this defendant. If he does not wish to take advantage of counsel, that's his fault, and he can go to trial without counsel then. But we are not going to delay trial because of his actions in this regard.

. . . . .

"But if you withdraw as counsel, what is he going to do? Because today—

"MR. ROSSETTI: Well, Your Honor, do you want me to answer that question?

. . . . .

[T]o speak for a moment on his behalf, not as a client of mine but as a defendant in a criminal case, he nonetheless—regardless of problems that he and I had which make it impossible in my view to represent him, regardless of those problems, he is still entitled to the assistance of counsel and the effective assistance of counsel.

"I can no longer render that assistance.

. . . . .

"THE COURT: He has been given the assistance of counsel. If he doesn't want to take advantage of that, we have done what we can. He goes to trial."

App. at 41a–42a. The court then addressed Mr. McFadden as follows:

"THE COURT: Mr. McFadden, you have heard your counsel state that every time he tries to deal with you or help you, you raise all sorts of objections. He can't effectively represent you without your cooperation.

"Today is the day of trial. What are we going to do, and what is the nature of your complaints? Tell us now.

"MR. McFADDEN: Well, the nature of my complaint first is, I haven't really been given a decent counsel.

"THE COURT: You what?

"MR. McFADDEN: I haven't been given a decent counsel. Each counsel I had wanted me to plead guilty, and I say I shouldn't have to plead guilty.

"THE COURT: You are not pleading guilty. You are going to trial.

"MR. McFADDEN: Yes, sir. Yes, sir.

"Every lawyer I have had wants me to plead guilty, and I tell them no and tell them to fight the case, but they don't want to. They want me to plead guilty

and they want to tell me I don't have a case, and I know I do.[8]

"THE COURT: Well, Mr. Rossetti has indicated that he will put up a defense if he will get your cooperation."

App. at 42a–43a. The trial judge asked the defendant to detail his dissatisfaction with his attorney. After hearing the various points raised by McFadden, the judge stated:

"Mr. Rossetti has been doing a lot for you on your behalf, and he now states that you are making it impossible.

"We are going to go to trial today. You are going to go to trial with Mr. Rossetti or without. He doesn't want to represent you because he said that you have made it impossible for him to effectively represent you.

"Now what are you going to do? We are going to trial today. Do you want him to represent you? If not, you can conduct your own trial, and I will order him to be available for any legal advice you may need."

App. at 54a–55a.

In the colloquy between the judge, the defense attorney, and the defendant, the judge indicated that he believed no attorney could get along with McFadden; McFadden accused Rossetti of making false charges against him and the judge of being unfair. Rossetti insisted that under no circumstances could he continue to represent McFadden, *inter alia*, because the defendant had threatened to sue him if he did not secure his freedom as a result of the trial, but he stated that if another lawyer "was brought in at this point, it might make a big difference" (App. at 69a). Moments later the interchange became more heated:

"MR. McFADDEN: Excuse me, Your Honor. If it please–I'll fire Mr. Rossetti, because Mr. Rossetti has been lying. He is lying, so—

"THE COURT: Mr. Rossetti–

"MR. McFADDEN: I'll fire him.

"THE COURT: Mr. Rossetti is an officer of this Court,—

"MR. McFADDEN: Of the Court, yes, sir.

"THE COURT: —and he has been for years. We know him and we rely on what he says. He would not come here and misrepresent anything.

"MR. McFADDEN: Well, he did, Your Honor. He did, period, and as of now he is fired, because I don't want him—

"THE COURT: All right. Then what are you going to do?

"MR. McFADDEN: All I have is me, and I'm going with that.

"THE COURT: All right. You don't feel, even with that, that you could sit here—

"MR. ROSSETTI: No.

"Why don't you give the man some time, Your Honor?

"THE COURT: How much time?

"MR. ROSSETTI: Perhaps even a few days.

"THE COURT: Where is he going to get counsel that will be ready in two days? That will be worse–

"MR. McFADDEN: Your Honor, I will represent myself.

"THE COURT: I don't even–I think that you have been so obstreperous here and so obstructive that you will cause some kind of disruption in the courtroom.

---

8. The trial judge leaned over backwards to help the defendant during the trial. Even with considerable help from his standby attorney and the trial judge during the trial, at the conclusion of the defense testimony the trial judge found it necessary to rule that defendant had not submitted sufficient evidence to justify his charging the jury on the entrapment issue, which was defendant's principal defense (N. T. 343–48, also N. T. 324–26). See *United States*

*v. Armocida*, 515 F.2d 49, 55 (3rd Cir. 1975). At this point in the trial, the trial judge permitted defendant to reopen his case and take the stand, with the examination to be conducted by his standby counsel (N. T. 349–50, 352). The court's charge presented the entrapment defense to the jury, and a thorough argument was made to the jury by defendant's standby counsel which occupies 23 pages of the transcript.

"MR. McFADDEN: Oh, please, please, please." [9]

App. at 69a–70a. At this point the prosecutor voiced a suggestion for handling this matter:

"MR. WEBB: Your Honor, if the government may be heard, I think the essence of what Mr. Rossetti is saying is that for him to go to trial today, he would be ineffective because of his relationship with the defendant.

"THE COURT: I recognize that.

"MR. WEBB: That's clearly evidenced by what the defendant is saying.

"The government has a concern that if the case is forced to trial in this posture, that there will be no effective representation by competent counsel.

"Mr. Rossetti has indicated that he does not feel that he can sit with the defendant and act as on–call legal advice for him.

"I think to try the case in this posture, with Mr. Rossetti's—

"THE COURT: This is a nice ploy. It has been pulled on me twice in a month.

"MR. WEBB: Your Honor, my concern is that we not do something here that is totally meaningless and that will come back on appeal.

"I think the defendant has indicated he is ready to go to trial. I would say give him two days or whatever period of time with all the material the government has made available this morning, the *Jencks* material, to Mr. Rossetti."

App. at 70a–71a. The discussion continued, with the judge focusing on the possibility of intentional delay by the defendant, while Rossetti and McFadden denied any such attempt.[10]

The judge decided to grant Rossetti's motion to withdraw, to continue the trial for two days while the defendant familiarized

9. As to the meaning of this comment by the defendant, we believe that in context it is just as reasonable to interpret these words as a protest to the judge's characterization of the defendant as disruptive as to interpret them as a demand by the defendant to be allowed to appear *pro se*. In any event, as the discussion in the text demonstrates, see pages 969–971 below, this remark is not dispositive of the issue of waiver.

10. "THE COURT: Whatever you did, both those counsel, who regularly represent persons in this Court, feel it is impossible to represent you. So, therefore, I can only—
"MR. McFADDEN: Do you feel it is impossible?
"THE COURT: I can only come to one conclusion: that it is impossible to get along with you. . . .
"THE COURT: I said you have failed to get along with two lawyers appointed. So when you do it once, all right, we will be fair with you. When it happens twice, then we come to a conclusion that you can't get along with counsel and that you may be doing this deliberately.
"MR. ROSSETTI: Your Honor, I would even disagree with that. I don't think there has been any ploy on his part here to delay anything.
"THE COURT: I don't know what—
"MR. ROSSETTI: The man—I think the man is just–is genuinely upset with something that may or may not have merit, and that I could not reason with him. I cannot. I ·He would not accept what I was telling him

as to what the law is, what·the procedure is. I can't represent him. But I don't think that there was any ploy here to delay things or a ploy for any other reason.
"THE COURT: We often run into situations like this. Through experience we have learned the reason that the situation develops is that the defendant is causing it to develop to somehow delay trial ·
"MR. McFADDEN: Your Honor,–
"THE COURT: –to a point where he does what he is doing now and say his trial has been delayed, therefore he is denied rights.
"You see, if we give another continuance, then he will say, 'Oh, my trial was delayed.'
"MR. ROSSETTI: Well, I think it should be at his request.
"MR. McFADDEN: Your Honor,–
"THE COURT: I don't know what he is requesting. I don't have the slightest idea what he is requesting.
"MR. .McFADDEN: All I request is you get me a lawyer that will listen to what I'm saying and apply what I'm saying to the Court."
App. at 73a–76a.
We note that as soon as the jury selection started the defendant, on his own initiative, asked for dismissal of all charges because of violations of the "Speedy Trial Act" (100a–101a). In ruling on this motion, the judge was required to consider "the best interest of the public . . . in a speedy trial," as well as the best interest of the defendant in such a trial. See note 2 above.

himself with the reports of witnesses, and to appoint advisory counsel to be present in the courtroom during the trial.[11] During this colloquy, the trial judge told the defendant in open court that his "only salvation was to listen to the advice of lawyers" (94a and note 12):

> "You have had two lawyers appointed in a row, and for some reason you just can't get along with them. Whether it is their fault or your fault, I don't know.
>
> "But I can only tell you that your only salvation is to listen to the advice of the lawyers."

App. at 93a–94a.

Two days later, on July 25, 1979, McFadden's trial commenced. He represented himself. Mr. Robert Lackey sat at counsel table with the defendant, but did not make objections or examine witnesses.[12] After a three–day trial, on July 30, 1979, the jury returned guilty verdicts on six counts. The trial judge sentenced McFadden the same day to imprisonment for a period of four years on each of four counts and for a period of ten years on each of two counts, all of which were to run concurrently beginning at the time the defendant was released from custody on his prior sentence. This appeal followed.

## II.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The purpose of this guarantee is to "assure 'Assistance' at trial, when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973).

It is clear from the above that defendant stated twice that he "would fire" his counsel and then stated that "as of now he is fired, because I don't want him. . . . All I have is me, and I am going with that." Again, he said to the court, "I will represent myself." Defendant's primary basis for his appeal is that he "did not exercise, knowingly, voluntarily and intelligently, his right to represent himself under 28 U.S.C. § 1654 and the Sixth Amendment, and thus did not waive his right to the assistance of counsel" (see issues listed as I in appellant's brief and reply brief). However, defendant has not cited *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), where the Supreme Court said at pages 814–16, 95 S.Ct. at page 2530:

> "In *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 [63 S.Ct. 236,

---

**11.** "THE COURT: Mr. McFadden, I want you to listen to me, because sometimes you don't listen to your attorneys or counsel.

"This trial, of course, must go ahead. We cannot have any further delay on it.

"I have secured an attorney from the Public Defender's Office,–it's not Mr. White,–Mr. Lackey, and told him that I want him present in the courtroom to be of assistance to you in conducting the trial.

"I cannot impose on him the full responsibility for the trial of your case, because it is too short a time for that. The responsibility falls on you.

"You have had two lawyers appointed in a row, and for some reason you just can't get along with them. Whether it is their fault or your fault, I don't know.

"But I can only tell you that your only salvation is to listen to the advice of the lawyers.

"So Mr. Lackey will be here at 9:30 to help you get ready for the trial; and I have also told you and told Mr. Rossetti that Lackey should talk to Rossetti to learn as much as he can about what the charges are and what the evidence is going to be so that he can be of more assistance to you.

"But remember, he is not your lawyer. You are your lawyer. But he is here to give such advice as you may need. He will be sitting in the courtroom throughout the trial.

"Do you understand that?

"MR. McFADDEN: Yes."

App. at 93a–94a.

The July 23, 1979, court order delaying the trial until July 25 and appointing counsel to assist the defendant at trial is attached to this opinion as Appendix A.

**12.** Mr. Lackey made a short opening and a long closing statement on behalf of the defendant after the trial judge stated that McFadden might prejudice his rights to dismiss at the close of the Government's case and might waive "his right against any comment on not taking the stand" if he made the opening statement (112a–116a). Also, he examined the defendant when he took the stand.

241, 87 L.Ed. 268], the Court recognized that the Sixth Amendment right to the assistance of counsel implicitly embodies a 'correlative right to dispense with a lawyer's help.' The defendant in that case, indicted for federal mail fraud violations, insisted on conducting his own defense without benefit of counsel. . . . This Court . . . [held] that 'an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel.' *Id.*, at 275 [63 S.Ct. at 240].

. . . . .

"In other settings as well, the Court has indicated that a defendant has a constitutionally protected right to represent himself in a criminal trial."

Also, at 819–21, 95 S.Ct. at 2533, the Court used this language:

"The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

". . . Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense."

Finally, in part IV of the *Faretta* opinion, the Court used this wording in rejecting at pages 832–34, 95 S.Ct. at page 2540, the application of the very cases relied on by defendant at page 8 of his counsel's opening brief:

"There can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel. See *Powell v. Alabama*, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158]; *Johnson v. Zerbst*, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; *Gideon v. Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799]; *Argersinger v. Hamlin*, 407 U.S. 25 [92 S.Ct. 2006, 32 L.Ed.2d 530]. For it is surely true that the basic thesis of those decisions is that the help of a lawyer is essential to assure the defendant a fair trial. And a strong argument can surely be made that the whole thrust of those decisions must inevitably lead to the conclusion that a State may constitutionally impose a lawyer upon even an unwilling defendant.

. . . . .

"It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' "

We recognize, as pointed out in part V of *Faretta*, that " . . . in order to represent himself, the accused must 'knowingly and intelligently' forego . . . [the benefits associated with the right to counsel]" and that "he should be made aware of the dangers and disadvantages of self–representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' " (422 U.S. at 835, 95 S.Ct. at 2541).

In evaluating defendant's contention that there was not sufficient evidence to justify the conclusion of the trial judge that defendant had been made aware of the dangers and disadvantages of self–representation, and of his right to counsel prior to his election to represent himself, the record includes the following pertinent material:

A. On the date McFadden was arrested for this crime in February 1979, he was advised of his right to counsel, as well as of the crimes for which he was charged and the penalties for such crimes. Competent counsel was appointed for him on the same date (see page 2 above).

B. After his first counsel had been relieved, defendant advised the United States Magistrate in early May 1979 (Document 13 in *United States v. McFadden*, W.D.Pa. Crim. No. 79–74) that, since his counsel would not file a Bill of Particulars and Motion for Discovery, "I must do this myself,"[13] making clear his unwillingness to follow his counsel's advice.

C. The correspondence between defendant and his counsel make clear his desire to dictate to his lawyers what legal steps they should take. See, for example, letter of May 16, 1979, to defendant from Mr. Rossetti in the Appendix to this opinion, and other letters attached to Mr. Rossetti's Motion to Withdraw (Document 21 in Crim. No. 79–74, W.D.Pa.).[14]

D. At a colloquy between defendant and the trial judge on July 23, the court pointed out that there had been continuances due to the change in lawyers, and the "speedy trial deadline" precluded a continuance in order to secure a third lawyer to represent the defendant (77a). Also, the judge explained to defendant that the Government was giving him all Jencks Act material at that time, even though prior to trial, in response to his request for "all the evidence" (78a),

witness Pearson was brought to trial at defendant's request and any recorded grand jury testimony was transcribed at defendant's request (81a). A transcript of the preliminary hearing testimony and recorded telephone conversations were made available to defendant (82a).

E. On July 23, the trial judge stated to Mr. Rossetti and defendant in open court: "I mean he [defendant] claims I am prejudiced, but I see he won't listen to me even when I try to tell him something.

"So that's why I believe Mr. Rossetti when he says he has had difficulty trying to communicate with you.

"All I can tell you is, you should listen to your lawyer, he knows what is to be done and what can be done.

. . . . .

"He is a very good lawyer. He is one of the best defense lawyers we have in Pittsburgh. So you can't say that he doesn't know what he is doing. He knows very much what he is doing.

. . . . .

"I can't do anything more for you at this time, except to say that we will seek to get a lawyer present to assist you in conducting your own defense.

"Now it is obvious that you don't know very much about what to do, and I'm sorry about that. We don't like to do that, but we have twice had lawyers appointed for you and you just don't get along with them.

. . . . .

"I'm not saying as Mr. Rossetti said, 'Don't blame you, you're all upset,' but I'm saying that I don't know why.

"If we appointed another lawyer, he is going to come around and say 'I just can't make this man understand what I'm talking about.'

---

**13.** The Government, at the request of his counsel, voluntarily made a large volume of documents available to defendant before the trial, so that the evidence indicates no need for filing the applications for discovery and particulars.

**14.** Paragraph 5 of Mr. Rossetti's motion to withdraw includes this wording: "This correspondence [between defendant and counsel] in-

dicates that from the outset the Defendant expected to control his defense without regard to the advice of counsel." Portions of this motion (Document 21 in *United States v. McFadden*, Crim. No. 79–74, W.D.Pa.) and of the correspondence attached are attached to this opinion as Appendix B.

"And one reason he can't make you understand is, you don't listen.

"MR. McFADDEN: I listen.

"THE COURT: One time when I was talking to you, you weren't listening. You wanted to read some papers then. That wasn't time to read papers. That was the time to listen.

"You have got to learn to listen to the lawyer.

"Now it is unfortunate that you can't get along with Mr. Rossetti, because you were very fortunate in having Mr. Rossetti appointed. He is one of the most experienced and one of the best criminal defense lawyers we have here.

"But if you can't get along with him and he just says he can't possibly do anything for you in view of your attitude, then you have blown it.

"All right. I will try to see if we can secure the attendance of an attorney who can advise you. I can't make him undertake the responsibility of the trial. I cannot continue this any further. We have got to have you go to trial 9:30 Wednesday.

"When I do get ahold of counsel, Mr. Rossetti has turned over all the papers to you, everything he has, and that's all, except the United States will try, though they don't have to,—if they have any transcribed grand jury testimony or any that can be transcribed, of witnesses who are going to appear in this case, they will see that you get that. [87a–90a]

. . . . .

"THE COURT: All right. I will see what the Federal Public Defender can do in supplying a standby counsel. If we do get one, I may ask him to confer with Mr. Rossetti to get some understanding of this.

"MR. ROSSETTI: I would be willing to do that.

"THE COURT: All right. This is all we can do. I just can't grant any continuance.

"MR. WEBB: Thank you, Your Honor.

"MR. ROSSETTI: Thank you Judge.

"THE COURT: When is our statutory Speedy Trial Act date? It is this week.

"MR. WEBB: I believe so, Your Honor, but I don't have the date readily available.

"THE COURT: Well, I know that we had to swear a jury this week." [92a]

We have held in the past that the trial court has "considerable discretion in refusing to" delay the trial in order to secure substitute counsel even though there is some indication of a defendant's dissatisfaction with his initial counsel. See *United States ex rel. Soto v. United States*, 504 F.2d 1339, 1345 (3rd Cir. 1974).

The dissent argues that McFadden never made a knowing, intelligent waiver of his right to counsel. The nature of the charges and the range of punishment had been pointed out in McFadden's two initial appearances before a magistrate. Two competent criminal lawyers had gone over McFadden's defenses, including that of entrapment, and discussed the necessary discovery;[15] yet McFadden refused to accept their advice. Having been supplied with two competent criminal defense lawyers, plus a third to assist him once he decided to represent himself, McFadden was entitled to no more. Certainly McFadden was not entitled to employ complaints against counsel as a dilatory tactic in order to postpone trial, raise a Speedy Trial Act claim, or await possible death or unavailability of prosecution witnesses, a course unquestionably suggested by the record of McFadden's conduct (see notes 1 and 10 above).

While recognizing that this is a close case, we have concluded that the district court did not commit reversible error on this record.[16]

---

15. See, *inter alia*, page 964, including note 1, and page 965.

16. See *Soto, supra* at 1345 of 504 F.2d, where this court held that a criminal defendant had not shown good cause for delaying a trial, where "no request for either substitute counsel or a continuance was expressed to the court prior to the day the trial started."

The judgment of the district court will be affirmed.[17]

## EXHIBIT A

### [CAPTION]

### ORDER

AND NOW, *July 23, 1979*, the petition of Donald Rossetti, Esq. to withdraw as counsel for defendant is GRANTED.

Upon hearing this date it appears that all discoverable materials and all Jencks Act material have been delivered prior to this date, or on this date, to counsel for defendant, and have been delivered to defendant in the presence of the Court.

The trial of the within matter is CONTINUED until *Wednesday, July 25, 1979, at 9:30 a. m.,* with the defendant conducting his own defense. It is further ORDERED that Robert Lackey, Esq., of the Federal Public Defender's Office is appointed to attend the trial of the defendant and to render such assistance as the defendant may require during the course of the trial.

ORDER filed.

/s/ Gerald J. Weber

The judges of the United States Courts of Appeals have differed as to the desirability of prescribing suggested colloquies to be conducted by the district judges when dissatisfaction with counsel is expressed by a defendant in a criminal case. *Cf. United States v. Plattner*, 330 F.2d 271, 275–76 (2nd Cir. 1964), with *Townes v. United States*, 371 F.2d 930, 934, 938–39 (4th Cir. 1966), Craven, J., concurring.

17. The following contentions of appellant have been carefully considered and rejected as lacking merit on the basis of the record in this case:
1. "Assuming that this Court does find a valid waiver of counsel, and an election to proceed pro se, the trial court infringed on Appellant's right to pro se representation." See pages 11–14 of appellee's brief and authority there cited.
2. "The trial court erred in unduly restricting Appellant's right to confrontation of witnesses and in restricting the presentation of his entrapment defense." There was no abuse of discretion in this evidentiary ruling. See, *inter alia*, cases cited at page 16 of appellee's brief.
3. "Appellant's constitutional (Fifth and Sixth Amendments) and statutory (Rule 43 Federal Rules of Criminal Procedure) right to be personally present at all stages of the

GERALD J. WEBER

*Chief United States*

*District Judge*

cc: William A. Webb, Asst. U.S. Attorney
Robert Lackey, Esq.
Federal Public Defender
Donald D. Rossetti, Esq.
1100 Lawyers Building
Pittsburgh, Pa. 15219
Carroll Garwin McFadden
Allegheny County Jail
United States Marshal
United States Probation Office

## EXHIBIT B

### [CAPTION]

### MOTION TO WITHDRAW

AND NOW COMES counsel for Carroll Garwin McFadden, Donald D. Rossetti, Esquire, and moves this Court for an order permitting counsel to withdraw and in support of same states as follows:

1. On April 17, 1979, Assistant Public Defender Thomas S. White filed a motion in this case to withdraw as counsel, citing as

criminal proceedings was violated by communications between the trial judge and the jury after the jury began its deliberations and without notice to Appellant or his advisory counsel."

The subject matter of the transcripts had already been presented to the jury and any error in making them available to the jury during its deliberations was harmless. See cases cited at pages 17 and 18 of appellee's brief. Also, defendant never made any objection to the submission of these transcripts to the jury until after the jury returned its adverse verdict.

4. "The court erred in refusing to consider Appellant's claim of pre–indictment delay." See *United States v. Lovasco*, 431 U.S.783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), where the Court said at 796, 97 S.Ct. at 2052:
"[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." and at 790, 97 S.Ct. at 2048:
"[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim. . . . ."

his reasons irreconcilable differences between he and the Defendant. The motion was granted.

2. On April 18, 1979, counsel was appointed to represent the Defendant.

3. At the time of counsel's appointment, Defendant was incarcerated at the Federal Correctional Institution at Lewisburg, Pennsylvania, for a parole violation. The basis of the parole violation was the Defendant's having left the district to which he was restricted.

4. Counsel's first step was to file a motion asking that the Defendant be returned to Pittsburgh immediately so that preparations for his defense could begin. The Honorable Daniel P. Snyder ordered instead that the Defendant be returned to Pittsburgh on July 1, 1979, setting the trial date for July 16, 1979. It was on July 2, 1979, that counsel first met and conferred with the Defendant.

5. . . . This correspondence [between counsel and the defendant] indicates that from the outset the Defendant expected to control his defense without regard to the advice of counsel.

6. Counsel has met with the Defendant on four occasions for a total of 4¾ hours. Very little of this time was spent in positive, meaningful discussion directed to actual trial preparation.

a. The first meeting lasted 1½ hours. Some background was obtained and counsel did gain a rudimentary understanding of the defense to be presented. Most of the time, however, was spent attempting to explain to the Defendant that a motion for bond reduction was pointless, that he was not entitled to Grand Jury minutes or Jencks (3500) material, that there was nothing illegal or improper about the indictment containing more charges than the complaint, and that the distribution of heroin and sale of heroin are the same within the meaning of the statutes under which he is charged. Defendant disagreed with all of counsel's remarks, repeatedly referring to his research and reading of the law.

b. The second meeting occurred on July 3, 1979. It lasted ¾ of an hour. This meeting was cut short by counsel because it had become an utter waste of time. During the first few minutes the Defendant became enraged over inaccuracies and omissions in his rap sheet and it became necessary to attempt to explain what a rap sheet is, how it is prepared, why one is often incomplete and its lack of evidentiary significance. The Defendant did not accept counsel's explanation.

. . . . .

c. The July 12, 1979, meeting lasted for one hour. The Defendant spent most of this hour shouting. He refused to accept counsel's recitation of the law, repeatedly and abusively stating that counsel was wrong and that he was on the government's side. He referred also to Assistant Public Defender Thomas S. White, saying he too had been on the government's side and that he was going to sue Mr. White as well as counsel. This meeting terminated when counsel agreed to see the judge immediately with the Defendant's list of demands. It was impossible to continue the conference.

(This meeting resulted in a conference in chambers on that same day. The result of that conference was Defendant's motion listing five demands, all of which were denied. . . .)

d. The July 18, 1979, meeting lasted for 1½ hours and was terminatd when the Defendant, enraged and shouting, walked out of the attorney's room in the Allegheny County Jail. Most of this meeting was spent listening to the Defendant's tirade against Agent Buford. The Defendant became enraged when he was told that this incident was not brought to the attention of the Court even though Defendant has no concept of the manner in which counsel intended to handle this incident. His exit followed a tirade against counsel when he repeatedly berated counsel for being wrong and being on the government's side. His parting words were "You make my blood boil".

. . . . .

8. It has been counsel's intention to use [alleged threats by Agent Buford of the DEA] as part of the defense. It is counsel's view that it indicates that, indeed, the Defendant was entrapped in this case. It was counsel's further intention to make an oral motion at the outset of this trial to dismiss the case due to prosecutorial misconduct based on this incident. It was anticipated that this Court would desire to reserve judgment on the motion until hearing the evidence during the course of this trial. Counsel nevertheless expected to request an evidentiary hearing prior to the selection of the jury on this point. It was also intended to orally move for dismissal of this case based on pre–indictment delay. This incident may well effect this motion also. It should be noted that counsel has been unable to develop either motion due to the attitude of the Defendant.

9. The relationship between counsel and the Defendant is such that counsel cannot adequately or effectively represent him at the trial of this case. This case holds extremely serious consequences for the Defendant. His defense appears to have merit. He is entitled to be effectively and adequately represented. It is averred that counsel can no longer provide this representation.

WHEREFORE, counsel moves for an order permitting his withdrawal.

Respectfully submitted,

/s/ Donald D. Rossetti
Donald D. Rossetti

APR 25 1979

Carroll G. McFadden II

27877–117
P.O. Box 1000
Lewisburg, Pennsylvania 17837

Mr. Donald D. Rossetti, Esquire
600 Lawyers Building
Pittsburg, Pennsylvania 15219

Dear Sir:

Received word from court appointing you as my attorney. I hope you plan on doing a good job.

I would like for you to file a Motion for Discovery of Evidence and Bill of Particulars. I myself would like a copy of each. Research must be done.

I requested a postponement of the case of a year. Mr. Thomas S. White said nothing.

I would also like a bond reduction. The main reason my bond was $25,000.00 and I had no objections; was to return to Lewisburg Federal Prison on a Parole Warrant. I've been given a parole with a release date of 2/80. That is February 1980. I'm to go to the Half–way–house in October. If I'm allowed a reduction in Bond I'll be able to rejoin my family. Wife and five children.

I appreciate all concern and honest, I repeat, honest effort.

Respectfully and Islamically
Carroll G. McFadden II
27877–117

P.S. I'll be expecting your reply.

. . . . .

May 16, 1979

Carroll G. McFadden, II,
27877–117
P.O. Box 1000
Lewisburg, Pa. 17837
Re: United States of America v.
Carroll Garwin McFadden
No. 79–74 Criminal

Dear Mr. McFadden:

The following is in response to your letters and also to advise you of the current status of the case.

I first want to make clear to you that you cannot expect me to handle this case at your direction. Although I was appointed, the fact remains that I am an attorney and I will function as one in this case. Whether this case is to be tried or you are to enter a plea of guilty is your decision. As to all else, any suggestions that you have will be considered, but all decisions will be mine. If this is not satisfactory, you should make application immediately for the appointment of other counsel.

The entire file of the Public Defender's office was turned over to me. Based on

your correspondence, I assume that you no longer desire to enter a plea of guilty as arranged by Mr. White. I will proceed on this assumption until you tell me otherwise. This should be discussed in detail when we meet.

I filed a motion requesting that you be returned to the Allegheny County Jail so that I would have the benefit of conferring with you in preparation for trial. On May 10, 1979, I had a conference with Judge Daniel J. Snyder, to whom the case has been assigned, and the day of trial has been set for July 16, 1979. He ordered that you be returned to Pittsburgh on July 1, 1979.

No motion will be made at this time for a continuance. Your wanting the case postponed for a year has no basis and is out of the question. No motion will be made for reduction of bond. This case will be disposed of long before the status of your bond will have any relevance to your parole. All discovery and pretrial motions have been completed.

I have discussed this case with Mr. White, the United States Attorney and your wife. I have reviewed the discovery material. It is obvious that if this case is to be tried the only possible defense is that of entrapment. In this case it would have to be established that at the time of your initial contact with Officer Earl Buford you had no predisposition to sell narcotics to anyone and that you would not have sold narcotics to anyone but for inducement of Buford. If there are any potential witnesses known to you that would help us establish this, please advise me of their names, where they can be found and what you believe they may know that would be helpful. You should get this information to me as soon as possible.

Very truly yours,

Donald D. Rossetti

DDR:sdi

———

Carroll G. McFadden II
27877–117
P.O. Box 1000
Lewisburg, Pa. 17837

June 11, 1979

Mr. Donald D. Rossetti
Attorney at Law
1100 Lawyers Building
428 Forbes Avenue
Pittsburg, Pa. 15219

Mr. Rossetti

In reply to your letter dated May 16, 1979.

Our meeting should be nice. I'm hoping we have the same conclusion in mind–my freedom.

No motion for bond reduction. In the event a guilty verdict is found how will the present bond effect the appeal bond. Personal Bond at this time will lower the appeal bond. Correct me if I'm wrong. I think I'm not wrong.

All pretrial motions and discovery motions have been completed. Do you have minutes for "Arrangement on Information for Indictment." These minutes are needed and I would like them. If you don't have them I suggest you get them.

Did Mr. White tell you he wouldn't let me tell the Magistrate how Officer Buford threatened me. He said "if I didn't tell on some other people I would be faced with other charges and he could put the word out that could cause harm to my wife and children because I wouldn't be there to protect them". I informed Mr. Buford that he could lose his life if he caused any harm to come to my family. I meant every word. My family doesn't receive any pain for my actions. Men understand that.

Mr. Rosetti, I'm looking forward to seeing you and I hope we see eye to eye. I'll expect your reply and you should get those minutes.

Islamically

Carroll G. McFadden II
27877

. . . . .

P.S. There are other matters but I'll discuss them with you once I'm in Allegany County Jail.

You can file a Motion with the Court making it possible to get the Allegany County

Jail Law Library open everyday. (5 days a week) It's never open when it should be. Remember, personal bond or a lower bond and "all discovery evidence". *ALL!*

Thank you

Islamically

Carroll G. McFadden II

Peace

**ADAMS, Circuit Judge, dissenting.**

I respectfully dissent. Carroll McFadden was undoubtedly an intractable defendant, unwilling to cooperate with his court–appointed attorney and mistrustful of the trial judge. The Sixth Amendment requires, however, that the accused in a criminal trial be afforded effective assistance of counsel unless he knowingly and voluntarily waives his right to such aid. This constitutional mandate is not relaxed when a defendant is difficult to deal with. The district judge's task of determining whether the accused has made an effective waiver is frequently intricate, particularly when, as here, the defendant has misgivings about the court and unclear about his own desires. But while I understand the problems that confronted the trial judge in this case, I must conclude that McFadden did not competently waive his Sixth Amendment right to the assistance of counsel. Accordingly, in my view his conviction was obtained in violation of his constitutional rights and must be reversed.

The facts of the case are set out in detail in the majority opinion, and need be recounted here only briefly. After his arrest on February 16, 1979, McFadden requested appointment of counsel on his behalf. Thomas S. White of the Federal Public Defenders Office was selected to represent McFadden, and continued in this capacity until April 18, when he filed a motion to withdraw. The motion, citing "irreconcilable differences" with the accused, was granted, and Donald D. Rossetti was appointed new counsel. On July 19, four days before the scheduled start of trial, Rossetti filed a motion to withdraw, stating that his relationship with McFadden had deteriorated to the point where it would be impossible for him to represent the defendant adequately or effectively. At a lengthy hearing conducted on July 23, the trial judge allowed Rossetti to withdraw.[1] He also ruled that McFadden was to proceed to trial in two days and was to represent himself, with Robert Lackey of the Federal Public Defenders Office as advisory counsel. Trial began on July 25. McFadden conducted his own defense, although Lackey made opening and closing remarks on his behalf. On July 30, McFadden was convicted and sentenced.

The Sixth Amendment guarantees that any person brought to trial must be accorded the right to the assistance of counsel. The majority concludes that McFadden competently waived this constitutional right. While the Supreme Court has long recognized that an accused may forego his right to counsel,[2] a valid waiver must be made "in the exercise of a free and intelligent choice, and with the considered approval of the court."[3]

In its recent holding in *Faretta v. California* that a state may not deny an accused the right "to proceed without counsel when he voluntarily and intelligently elects to do

---

1. The difficulties between McFadden and Rossetti arose from McFadden's insistence that his attorney file motions to reduce bond and to suppress evidence. Both Rossetti and the district judge who presided at the July 23 hearing characterized these maneuvers as "useless." Rossetti also indicated that McFadden had threatened to sue him if his trial did not result in acquittal, although McFadden denied this.

2. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

3. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942). The Supreme Court has held in other contexts as well that a waiver of a constitutional right, to be valid, must be made by the accused personally, with knowledge both of the right and of the consequences of waiver. *See, e. g., Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (right to have counsel present during questioning in custodial setting); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (same).

so," [4] the Court stressed that the decision to dispense with counsel must be the deliberate and well–informed choice of the accused:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forego those relinquished benefits. . . . Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self–representation, he should be made aware of the dangers and disadvantaged of self–representation.[5]

The Supreme Court has placed on the trial judge "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver by the accused." [6] And the Court made it clear in *Von Moltke v. Gillies* that a trial judge must conduct a thorough inquiry before accepting a defendant's decision to proceed without an attorney:

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole

matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.[7]

In the present case, both Rossetti and the prosecutor expressed concern at the July 23 hearing that, without competent counsel, McFadden would be denied effective representation. In reply to the trial judge's opening remarks that if McFadden did not wish to continue with Rossetti as his lawyer, he could proceed to trial without counsel, Rossetti commented:

> MR. ROSSETTI: [T]o speak for a moment on [McFadden's] behalf, not as a client of mine but as a defendant in a criminal case, he nonetheless—regardless of problems he and I had which make it impossible in my view to represent him, regardless of those problems, he is still entitled to the assistance of counsel and the effective assistance of counsel.

And after the suggestion that McFadden proceed without counsel had been put forward, Webb, the prosecuting attorney, made the following remarks:

> MR. WEBB: The government has a concern that if the case is forced to trial in this posture, that there will be no effective representation by competent counsel. . . . My concern is that we not do something here that is totally meaningless and that will come back on appeal.

Especially after such serious doubts regarding McFadden's ability to proceed *pro se* had been articulated, the district judge should have made a "penetrating and comprehensive examination" to ensure that McFadden knew what was at stake in representing himself. But at no time during the July 23 hearing was McFadden sufficiently alerted to the complexity of pro-

---

4. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975) (emphasis deleted).

5. *Id.* at 835, 95 S.Ct. at 2541 (citations omitted).

6. *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

7. *Von Moltke v. Gillies*, 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948).

ceeding without a lawyer.[8] The district judge did not apprise him of the need to be familiar with the rules of evidence, with the proper manner of making objections, with the acceptable method of questioning witnesses, or with any of the other elements of preparing a defense and conducting a trial.[9] Also, the trial judge did not ascertain whether McFadden understood the nature of the charges, the possible defenses, the range of possible punishments, or the other factors that the *Von Moltke* Court deemed essential to a competent and intelligent waiver.[10] It is not enough, as the majority suggests, that McFadden knew that he had a right to counsel; the issue rather is whether he comprehended the full implications of a forfeiture of that right. As the Supreme Court has declared, an accused may waive his constitutional right to assistance of counsel only "if he knows what he is doing and his choice is made with eyes open."[11] When, as here, no steps are taken to ensure that the accused understands the consequences of foregoing the assistance of an attorney, the accused cannot be said to make a knowing waiver.

The record also casts doubt on whether any decision on McFadden's part to proceed without professional assistance was made voluntarily. At no time during the July 23 hearing was McFadden asked if he wished to waive his right to counsel, nor was the trial judge willing to entertain Rossetti's suggestion that another attorney be appointed to replace him as the defendant's representative. Instead, the district judge opened the proceedings on July 23 by presenting McFadden with a choice between continued representation by Rossetti (who by his own admission could no longer adequately represent the accused) and self—representation.[12] Further, nothing in the

**8.** The trial judge suggested to McFadden the importance of having competent counsel only after ruling that McFadden would have to conduct his own defense:

> THE COURT: I cannot impose on [another attorney] the full responsibility for the trial of your case because it is too short a time for that. The responsibility falls on you.
>
> You have had had two lawyers appointed in a row, and for some reason you just can't get along with them. Whether it is their fault or your fault, I don't know.
>
> But I can only tell you that your only salvation is to listen to the advice of the lawyers.

It is also significant that, after he had accepted Rossetti's motion to withdraw, the district judge commented that it would not be easy for McFadden to represent himself.

> THE COURT (addressing McFadden): Now it is obvious that you don't know very much about what to do, and I'm sorry about that. We don't like to do that [i. e., have defendants represent themselves], but we have twice had lawyers appointed for you and you just don't get along with them.

**9.** The problems that defendants who proceed *pro se* encounter were summarized by Mr. Justice Sutherland in *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932):

> Even the intelligent and educated laymen has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.

**10.** The magistrate before whom McFadden appeared after his arrest on February 22, 1979 apparently did notify him of the offenses with which he was charged and the punishments those crimes carried. As *Von Moltke* makes clear, however, a defendant's waiver of the right to counsel is made knowingly only if he apprehends the charges and possible punishments at the time the waiver is made. *See Von Moltke v. Gillies*, 332 U.S. at 724, 68 S.Ct. at 323. A magistrate's explanation, made five months before defendant's purported waiver, would not appear to be an acceptable substitute for the searching inquiry required by *Von Moltke* and *Johnson v. Zerbst* to be made by the trial judge.

**11.** *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

**12.** The July 23 proceedings began with the following remarks by the trial judge:

> THE COURT: Mr. Rossetti, we have your motion to withdraw. Although it contains a good deal of serious matters concerning yourself, there is no reason here for the postponement of trial.
>
> Counsel has been afforded to this defendant. If he does not wish to take advantage of

record suggests that McFadden was warned before July 23 that a replacement counsel would not be appointed to represent him if Rossetti's motion to withdraw was granted. McFadden thus had no reason to know before the hearing that Rossetti constituted his last chance to have a court–appointed attorney.

Missing, too, at the July 23 hearing was an opportunity for McFadden to make a calm and rational decision about how he wanted to be represented. The proceedings abounded with numerous heated exchanges between McFadden and the court,[13] and the district judge, before the hearing was over, understood McFadden to have chosen to act on his own behalf at his trial. But I do not believe that a "waiver" by a defendant in

McFadden's position can be said to have been voluntarily made unless the accused was afforded a reasonable opportunity to reflect dispassionately about the decision he was being called upon to make. Without time for thought, a defendant like McFadden, untutored in the law and pressured by the court, can hardly be expected to insist on his right to be assisted by an attorney.

Under these circumstances, even had McFadden evinced a desire to act as his own counsel, there would be serious questions concerning the voluntariness of his choice. McFadden's conduct at the July 23 hearing did not, however, unambiguously manifest such a decision. At one point the defendant indicated that he wished to represent himself,[14] while just a few minutes

counsel, that's his fault, and he can go to trial without counsel then.

At various points later in the hearing the judge reminded McFadden that if he was to be represented at trial at all, it would have to be by Rossetti:

THE COURT: Now it is unfortunate that you can't get along with Mr. Rossetti, because you were very fortunate in having Mr. Rossetti appointed. He is one of the most experienced and one of the best criminal defense lawyers we have here.

But if you can't get along with him and he just says he can't possibly do anything for you in view of your attitude, then you have blown it.

Because the initiative to proceed *pro se* came from the trial judge and not the accused, the present case is very different from *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), on which the majority relies. *Faretta* establishes that a defendant has the constitutional right to proceed *pro se* when he elects to do so, but it in no way relaxes the standard for determining whether an accused has effectively waived his right to the assistance of counsel. The defendant in *Faretta* repeatedly requested to be allowed to represent himself; the question for the Supreme Court was whether the Sixth Amendment includes a right of self–representation. In contrast, the suggestion to proceed without counsel in the instant case was advanced not by the defendant McFadden but by the district judge. The record does not even indicate that McFadden requested Rossetti to resign as his counsel; the attorney's motion to withdraw was apparently made on his own initiative, based on his own judgment that he could no longer provide McFadden with effective representation. *Faretta* does not suggest that a defendant can be compelled to proceed *pro se* when his court–

appointed attorney withdraws from his defense.

13. The following colloquy conveys the tense atmosphere of the July 23 hearing:

THE COURT: Here, we are at this point: You have had two counsel. You fought with both of them.

MR. McFADDEN: Your Honor, I did not fight with both counsel. I don't appreciate the Court's telling me I fought with them. I talked with Mr. White on two occasions. He withdrew through a letter.

What kind of conversations did we have?

THE COURT: Whatever you did, both those counsel, who regularly represent persons in this Court, feel it is impossible to represent you. So, therefore, I can only—

MR. McFADDEN: Do you feel it is impossible?

THE COURT: I can only come to one conclusion: that it is impossible to get along with you.

MR. McFADDEN: That's prejudicial on behalf of the Court.

THE COURT: Yes.

MR. McFADDEN: Very.

THE COURT: It is a conclusion I make. I am making very clearly.

MR. McFADDEN: Yes, sir.

THE COURT: I am telling you.

MR. McFADDEN: It's an error.

THE COURT: I am telling you.

MR. McFADDEN: It's an error.

THE COURT: Oh, it's an error. That's fine. You are going to be a real smart lawyer.

14. The transcript contains the following exchange:

MR. ROSSETTI: Judge, I cannot represent this man, and I don't see that you can—

later he requested the court to appoint an attorney to handle his defense.[15] I doubt whether McFadden's comments at the July 23 hearing can fairly be understood as a request to proceed without counsel.

Although I believe that McFadden did not knowingly and voluntarily waive his rights under the Sixth Amendment, I recognize that serious and complicated issues are presented when, as here, an accused and his court–appointed counsel develop irreconcilable differences. Certainly, a court cannot tolerate a disingenuous malcontent who creates confusion in order to delay the start of trial. Here, however, Rossetti insisted that McFadden's objections to his representation were not contrived to delay the start of trial. Further, I express no opinion whether a court is ever required to appoint successive attorneys to represent a defendant who is dissatisfied with the court's earlier choices. In particular, I do not reach the question whether the trial judge in this case would have been required to appoint an attorney to replace Rossetti. Rather, my concern is that there is no basis for concluding on the record here that McFadden knowingly and voluntarily waived the right to counsel that is guaranteed by the Sixth Amendment. That being the case, as I view it, McFadden's conviction was obtained in violation of his constitutional rights and should be reversed.

THE COURT: Who else can? Nobody else can.

MR. McFADDEN: I will represent myself, Your Honor.

THE COURT: And his attitude—

MR. McFADDEN: I will represent myself.

15. Despite McFadden's statement during the exchange with Rossetti and the district judge that he would represent himself, his intentions remained unclear, prompting the following exchange:

THE COURT: I don't know what [McFadden] is requesting. I don't have the slightest idea what he is requesting.

MR. McFADDEN: All I request is you get me a lawyer that will listen to what I'm saying and apply what I'm saying to the Court.