SLOVITER, Circuit Judge,
Dissenting.
No one could argue with Chief Judge McKee’s exemplary exposition of the legal principles applicable when a defendant requests counsel and/or chooses to represent *669 himself. My quarrel with the majority lies in the application of those principles to the case at hand. Low didn’t just request a counsel. He requested his fifth counsel. The majority states that Low “may well have been trying to do little more than ‘game the system.’ ” I think that Low was indeed gaming the system, and that we should not permit him to do so.
A brief recapitulation of the facts will show why.
On September 28, 2006, Low and his court-appointed counsel, Lori Koch, both signed a plea agreement whereby Low agreed to plea guilty to one count of knowingly and intentionally distributing and possessing with the intent to distribute “more than fifty grams of cocaine base, to ■wit, ‘crack’ cocaine” and one count of being a felon in possession of a firearm. App. at 8. That same day, in the presence of counsel Low entered his guilty plea after an extensive colloquy with the District Court, which the District Court accepted.
Low subsequently dismissed Attorney Koch and retained private counsel, Attorney Ari Karpf. On May 30, 2007, the evening before his sentencing was scheduled to occur, Attorney Karpf moved to withdraw based on irreconcilable differences. Low stated his intent to have counsel withdraw and also moved to withdraw his guilty plea. Low asserted that prior counsel coerced him into pleading guilty and that none of the substances he possessed contained crack. The District Court granted the counsel’s motion to withdraw and appointed Attorney Frederick Klepp as the replacement. On August 2, 2007, Low withdrew his motion to withdraw his guilty plea. However, on August 13, 2007, Low reinstated his motion to withdraw his plea. Shortly thereafter, Low moved to remove Klepp as counsel.
During a hearing on the motions, the District Court instructed Low that he was going to grant his motion for withdrawal of counsel and appoint another counsel. As the majority points out, the District Court warned Low at length that “[i]f you have any dispute with [new] counsel, he will not be relieved, he’ll be standby counsel and you’ll proceed pro se.” Supp. App. at 52. Low replied that he “[understood.” Supp. App. at 53. Attorney John Renner was appointed as Low’s fourth counsel. During an April 23, 2008 hearing, Low again withdrew the motion to withdraw his plea and stated, under oath, that he understood that at sentencing he would not be challenging the type of narcotics described in the plea agreement.
On June 7, 2008, Low asked that he be relieved of Attorney Renner and be appointed a fifth attorney. During a July 22, 2008 hearing, the Court granted Low’s motion to remove Attorney Renner but, pursuant to its previous warning, refused to provide Low with another attorney. However, the Court instructed Attorney Renner to remain available as standby counsel.
The next day, the Government wrote to the District Court, noting that because Low was now proceeding pro se, the Court should conduct a colloquy to warn Low of the potential pitfalls of self-representation pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Low responded by letter stating, “I ... object to this hearing,” Supp. App. at 95 (emphasis in original), and stated, “I am prepared to move forward with sentencing on my own.” Id. Low also objected to Renner “step[ing] in and handling] the sentencing hearing....” Id. (internal quotation marks omitted).
Notwithstanding Low’s objection, at the beginning of the sentencing hearing, the District Court specifically called to Low’s attention the dangers of pro se representation. App. at 105-06. The Court told Low that it wanted to be sure that “you’re fully *670 aware that in proceeding without an attorney that you could be potentially subjecting yourself to additional problems because of the lack of full knowledge of the situations that are involved, or the law, and what they may very well mean with respect to your eventual outcome in this case.” App. at 105. The Court then asked if Low understood these potential problems and whether he understood, specifically as to sentencing, the “issues involved with respect to acceptance of responsibility, [and] other calculations within the Presentence Report....” App. at 106. While at first not understanding the question, upon clarification Low stated that he did understand. However, Low continued to insist that he was not choosing to proceed pro se. The Court responded that by rejecting four lawyers, Low had, by his actions, waived his right to an attorney.
However, the Court directed that Attorney Renner be present in order to safeguard Low’s rights, should Low need assistance. During sentencing, Low consulted Renner at least twenty times on a variety of issues. Indeed, he even referred to Renner as “my lawyer.” See, e.g., App. at 116 (“Mr. Low: Can I have one second to talk to my lawyer?”). In fact, Renner called two witnesses on Low’s behalf.
We review de novo a defendant’s claim that he was denied his Sixth Amendment right to counsel. United States v. Goldberg, 67 F.3d 1092, 1097 (3d Cir.1995). Application of the facts to the legal principles articulated by Chief Judge McKee demonstrates that Low’s Sixth Amendment rights were satisfied.
It is undisputed that Low was warned by the District Court that should he fail to cooperate with his fourth attorney, he would not be appointed a fifth and would have to proceed pro se. The Court’s warning, while clearly indicating that Low’s right to counsel would be waived by continued misconduct, did not contain all of the details set forth in Faretta regarding the risks of proceeding pro se. However, Low had evinced an understanding of the importance of counsel, his rights, and the sentencing process.
He did so first on July 22, 2008, before the motion to withdraw Renner had been granted, when Low stated his understanding that he was at risk of losing three points for acceptance of responsibility at sentencing, Supp. App. at 76,[1] later when he objected to the Faretta colloquy, Supp. App. at 95, and thereafter when, in response to the Court’s inquiry, he affirmed that he understood the perils of proceeding without counsel and that he felt comfortable navigating the sentencing procedures himself. App. at 106.
Although a waiver of counsel at sentencing must be knowing and intelligent, “the inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it. Therefore, it need not be as exhaustive and searching as a similar inquiry before the conclusion of trial.” Salemo, 61 F.3d at 219. Here, the District Court specifically warned Low of the risks of proceeding pro se.
Additionally, Low made extensive use of standby counsel during sentencing, all of which is noted in the transcript. We have stated that the availability and use of *671 standby counsel is a factor militating against a finding that the Sixth Amendment was violated. See, e.g., Gov’t of Virgin Islands v. James, 934 F.2d 468, 472-73 (3d Cir.1991).
Accordingly, I would reject Low’s contention that he was deprived of his right to counsel. The District Court adequately balanced the “defendant’s Sixth Amendment right to counsel with [the] district court’s legitimate interest in guarding against manipulation and delay.” Goldberg, 67 F.3d at 1098. In any event, Renner did in fact act as Low’s counsel and Low took full advantage of his services. I would affirm the judgment of sentence.

. As the majority notes, "we have on occasion looked beyond the District Court's colloquy to determine whether a defendant understood the charges and sentence.” United States v. Jones, 452 F.3d 223, 232 (3d Cir.2006). In United States v. McFadden, where the defendant had dismissed just two counsel, we looked beyond the court’s warning to the advice competent counsel had given because the defendant "was not entitled to employ complaints against counsel as a dilatory tactic.” 630 F.2d 963, 972 (3d Cir.1980).