UNITED STATES *of* America

v.

WELTY, John Jacob, Appellant.

No. 81–1608.

United States Court of Appeals, Third Circuit.

Submitted Dec. 16, 1981.

Decided March 2, 1982.

---

John D. Arseneault, Robinson, Wayne & Greenberg, Newark, N. J., for appellant.

William W. Robertson, U. S. Atty., Samuel Rosenthal, Asst. U. S. Atty., Newark, N. J., for appellee.

Before ADAMS, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

John Jacob Welty, the defendant-appellant in this case, claims that he did not knowingly and intelligently waive his sixth amendment right to counsel when he was tried and convicted for bank robbery. He thus seeks a new trial.

The waiver-of-counsel issue, which we have encountered before in *United States v. McFadden*, 630 F.2d 963 (3d Cir. 1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981), is a troubling one, particularly in light of the overwhelming evidence of Welty's guilt, as revealed by the instant record. Nevertheless, giving full recognition to our mandate that every defendant be afforded a fair trial, we are required to reverse Welty's conviction and direct that he be tried anew. We do so because the record does not reveal that the standard for an effective waiver, as enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), was met in this case.

### I.

On July 25, 1980, two armed men robbed the Town and Country Bank in Pohatcong, New Jersey. A grand jury investigating the robbery subsequently subpoenaed Welty to testify before it. On November 14, 1980, Welty appeared before a federal magistrate to request the appointment of counsel to represent him in connection with his grand jury appearance. After questioning Welty and satisfying himself that Welty could not afford to retain a private attorney, the magistrate appointed Michael N. Pedicini, an assistant federal public defender, to represent Welty.

On November 21, 1980, Welty, along with Elwood Jones, was indicted for one count of bank robbery and one count of assault with a dangerous weapon while robbing a bank, in violation of 18 U.S.C. § 2113(a) and (d) (1976). On February 2, 1981, just before the jury was to be selected for his trial, Welty requested an opportunity to secure his own counsel, or in the alternative, to represent himself. Def.App. at 10. The trial judge, observing that Welty had previously asserted that he could not afford privately retained counsel, indicated his belief that Welty's motion was merely a tactic to delay the trial. The judge told Welty he would not delay the trial to allow Welty to obtain substitute counsel, and that Welty would either have to continue with Pedicini as his counsel or proceed *pro se*. After Welty responded, "I'll go without him [Pedicini]," the court discharged Pedicini from the case. *Id.* at 12. Welty then proceeded to represent himself during the first and second days of the trial.

At the start of the third day of the trial, February 4, 1981, after most of the witnesses had been called, Welty changed his mind about the advisability of acting as his own attorney, and made a motion for "assistance of effective counsel." *Id.* at 13. The trial judge, noting that Welty had had a lawyer but had fired him, summarily denied Welty's motion as well as his motion for a mistrial, perceiving them as an attempt to manipulate the court and to introduce error into the proceedings. The court said: "You made this bed, my friend, and you're going to lie in it. I am not wasting a lawyer's time to sit around here and hold your hand." *Id.* at 14.

On February 5, 1981, Welty and Jones were convicted on both counts of the indictment. After the trial had concluded, Welty asked Pedicini to represent him in connection with his sentencing. Supp.App. at 27. On March 10, 1981, Welty was sentenced to twenty-five years' imprisonment.[1] He now appeals.

---

1. Jones, his co-defendant, ultimately received a

## II.

Where, on the eve of trial, a defendant seeks new counsel, or, in the alternative, opts to represent himself, the district court must engage in two lines of inquiry. First, the court must decide if the reasons for the defendant's request for substitute counsel constitute good cause and are thus sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained. If the district court determines that the defendant is not entitled to a continuance in order to engage new counsel, the defendant is then left with a choice between continuing with his existing counsel or proceeding to trial *pro se*, thus bringing into play the court's second stage of inquiry. Since the decision to proceed *pro se* involves a waiver of the defendant's sixth amendment right to counsel, the district court then has the responsibility of ensuring that any decision by the defendant to represent himself is intelligently and competently made. *Johnson v. Zerbst, supra*, 304 U.S. at 465, 58 S.Ct. at 1023.

It is vital that the district court take particular pains in discharging its responsibility to conduct these inquiries concerning substitution of counsel and waiver of counsel. Perfunctory questioning is not sufficient. This is true even when the trial judge strongly suspects that the defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial. Although such improper tactics by an accused cannot be allowed to succeed, at the same time, a trial cannot be permitted to go forward when a defendant does not fully appreciate the impact of his actions on his fundamental constitutional rights.

### A.

When a defendant requests a substitution of counsel on the eve of trial, the district court must engage in at least some inquiry as to the reason for the defendant's dissatisfaction with his existing attorney. As Chief Justice (then Judge) Burger stated in *Brown v. United States*, 264 F.2d 363, 369

---

sentence of fifteen years' imprisonment.

(D.C.Cir.) (en banc) (Burger, J., concurring in part), *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959):

> [W]hen, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more. If no reasons are stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known.

*Accord, McKee v. Harris,* 649 F.2d 927, 934 (2d Cir. 1981).

It is true that "there is no absolute right to a particular counsel," *United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir. 1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970), and that in order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney, *McKee v. Harris, supra,* 649 F.2d at 931; *United States v. Calabro,* 467 F.2d 973, 986 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). But without even a minimal inquiry into the reason for the defendant's dissatisfaction with his lawyer, the district court has no way of knowing whether good cause for substitution of counsel exists.

## B.

If the district court has made the appropriate inquiries and has determined that a continuance for substitution of counsel is not warranted, the court can then properly insist that the defendant choose between representation by his existing counsel and proceeding *pro se. McKee v. Harris, supra,* 649 F.2d at 930–31; *Wilks v. Israel,* 627 F.2d 32, 35–36 (7th Cir. 1980); *United States v. Davis,* 604 F.2d 474, 483 (7th Cir. 1979); *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976). The court, however, has the responsibility of ensuring that any choice of self-representation is made knowingly and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself. In *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), the Supreme Court cautioned that

> [w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. . . . Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

(Citations omitted.) *Accord, United States v. McFadden, supra,* 630 F.2d at 970.

In order to ensure that a defendant truly appreciates the "dangers and disadvantages of self-representation," the district court should advise him in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful. *See Maynard v. Meachum, supra,* 545 F.2d at 279. The district court judge should tell the defendant, for example, that he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure, rules with which he may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the effectiveness of his defense may well be diminished by his dual role as attorney and accused. In addition, as Justice Black wrote in *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality opinion),

> [t]o be valid [a defendant's] waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possi-

ble defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

The mere "fact that an accused may tell [the court] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *Id.* "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances," *id.,* and only after bringing home to the defendant the perils he faces in dispensing with legal representation. After undertaking such an inquiry, "whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. at 1023. Thus, while we do not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, *see, e.g., United States v. Carter,* 619 F.2d 293 (3d Cir. 1980), a defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary.

### III.

### A.

In this case, the record reveals no inquiry by the district court as to the reason for Welty's dissatisfaction with his assigned counsel and little inquiry into whether Welty's decision to proceed *pro se* was made knowingly and intelligently. While we can understand, and perhaps even sympathize, with the frustration and exasperation of the district court judge, even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights. The record, far from establishing that Welty knew what he was doing and that his choice was made with his eyes open, reveals substantially more emphasis by the court upon forcing a quick decision from Welty than on ensuring an intelligent and thoughtful course of action:

MR. PEDICINI: Your Honor, my client has indicated to me his desire to either, number one, have an opportunity to secure his own counsel, or number two, to represent himself.

I advised him that he has a right to represent himself if he so desires; that I don't feel it's advisable but that is a decision only he can make.

THE COURT: You know what they say about somebody who represents themselves? He has a right but I'll not delay the trial so you can go shopping for another lawyer.

You're a public defender, you've been appointed, apparently he claims inability to procure his own counsel. You were appointed. I will not delay the trial. Change of counsel should have been long ago.

What's your problem? You want to represent yourself or Mr. Pedicini? Just answer my question yes or no.

Are you going to represent yourself or—

DEFENDANT WELTY: If necessary, your Honor, yes.

THE COURT: You want to represent yourself?

DEFENDANT WELTY: If I have to, yes.

THE COURT: You realize it's inadvisable?

DEFENDANT WELTY: Well, if I have to—

THE COURT: Don't give me if you have to. Just a minute, sir. Don't you give me if you have to. You have a publicly appointed counsel who is quite capable, he's tried many cases here, he's a very able attorney.

I tell you now, it is inadvisable for you to represent yourself. If you want to that is your right. Now make up your mind.

DEFENDANT WELTY: You don't give me much choice in the matter.

THE COURT: No, sir, I do not. And I think you're fooling with the Court and you're trying a deliberate delay tactic. You're going to go ahead to trial.

DEFENDANT WELTY: I'm not trying to delay anything.

THE COURT: I want good deportment out of you, Mr. Welty. If you don't dot all your i's and cross all your t's you're going to have a lot of trouble with me.

You tell me you want to represent yourself or Mr. Pedicini, one way or the other now.

DEFENDANT WELTY: I'd like to have the grace of the Court to get paid counsel, your Honor.

THE COURT: Sir, you came in here and took an oath you were impoverished. You're going to go ahead today without Mr. Pedicini, yes or no?

DEFENDANT WELTY: I'll go without him.

THE COURT: Mr. Pedicini, you're discharged.

MR. PEDICINI: Thank you, your Honor.

Def.App. at 10–12.

■ We recognize that the determination whether to delay the trial to permit a substitution of counsel generally rests within the sound discretion of the district court. *See Paullet v. Howard,* 634 F.2d 117, 119 (3d Cir. 1980) (per curiam); *United States v. McFadden, supra,* 630 F.2d at 972; *United States ex rel. Carey v. Rundle, supra,* 409 F.2d at 1216. *See also Ungar v. Sarafite,* 376 U.S. 575, 588–91, 84 S.Ct. 841, 849–50, 11 L.Ed.2d 921 (1964). However, in the total absence of any inquiry into the cause of Welty's dissatisfaction with Pedicini, we have no way of knowing whether Welty may have had some valid ground for seeking a substitution of counsel. *See United States v. Williams,* 594 F.2d 1258, 1260 (9th Cir. 1979) (court made no inquiry into cause of defendant's dissatisfaction with counsel); *Brown v. Craven,* 424 F.2d 1166, 1169 (9th Cir. 1970) (same); *cf. McKee v. Harris, supra,* 649 F.2d at 933–34 (although court conducted no formal inquiry, defendant had already stated reasons for his dissatisfaction with counsel). Although the district court was of the view that Welty's request for new counsel was contrived for purposes of delay, the record is barren of any evidence which would support the court's view that Welty's objection to Pedicini was groundless. *Cf. McKee v. Harris, supra,* 649 F.2d at 932–33 (defendant's complaint that counsel had pessimistic view of his case did not constitute good cause for substitution of counsel); *United States v. Davis, supra,* 604 F.2d at 481 (defendant had discharged three successive attorneys).

The record indicates that the district court judge did not investigate the basis for Welty's decision to forego counsel because he regarded Welty's action as "fooling with the Court" and a "deliberate delay tactic," Def. App. at 11, and because he "felt inhibited to inquire [into Welty's dissatisfaction with Pedicini] because of the potential violation of the [attorney-client] privilege" covering Welty's relationship with his counsel, Supp.App. at 27 (remarks at sentencing). However, a district court judge can inquire into the nature of a defendant's dissatisfaction with counsel and ensure that a defendant's waiver of counsel is knowing and intelligent without intruding on the attorney-client privilege. Although the inquiry must be pursued delicately, a judge can determine whether a defendant's differences with counsel present substantial problems such as a conflict of interest or a complete breakdown in communication, without delving into the merits of the defendant's legal position or the contents of his conversations with his lawyer.

B.

■ As for the defendant's decision to proceed *pro se,* the crucial task in determining the competence of a defendant's waiver decision is guaranteeing that the defendant understands what he is giving up, that he is "made aware of the dangers and disadvantages of self-representation," *Faretta, su-*

*pra*, 422 U.S. at 835, 95 S.Ct. at 2541. Although the nature of the representation the defendant is receiving from his counsel is relevant to a decision to proceed *pro se*, it is not necessary for the trial judge to explore the confidential relationship between the defendant and his attorney in order to make certain that the defendant knows the problems he faces in dispensing with legal representation entirely.

■ Even if Welty's attempt to replace Pedicini with new counsel was, as the district court judge believed, designed merely to delay the trial, once Welty's request for substitution of counsel was denied—and the possibility for delay obviated—the court still had the obligation to ensure that Welty's choice between his remaining options, retention of Pedicini or self-representation, was intelligently made. The fact that Welty may have believed that he could gain some improper advantage in the judicial process by firing his counsel and proceeding *pro se* does not mean that he realized and had knowledge of all the implications and possible pitfalls of self-representation.

■ Finally, the fact that Welty was, in the trial judge's words, "an experienced litigant,"[2] Def.App. at 13, cannot, without more, suffice to establish that Welty's reluctant decision to proceed *pro se*—in the wake of the judge's insistence that he decide "one way or the other now," *id.* at 11—was knowingly and intelligently made. There is no indication that Welty had ever represented himself during a trial before. In any event, we could not extrapolate from Welty's participation or self-representation in other cases that he made a knowing and intelligent waiver of counsel in this case. *Cf. United States v. Harrison*, 451 F.2d 1013 (2d Cir. 1971) (per curiam) (holding that there was no intelligent waiver and not enough exploration by the trial judge even where the defendant was an attorney who professed familiarity with criminal law).

Unless a criminal defendant knowingly and voluntarily waives his right to the assistance of counsel, it cannot be said that the requirements of the sixth amendment have been met. We recognize, of course, that in conducting an inquiry into waiver of counsel, the district court often is faced with a difficult task. Particularly this is so when the defendant, as is Welty here, is apparently street-wise and experienced in the litigation process and where friction has arisen between the defendant and his then-counsel. But the making of such inquiries and determinations is not unusual for a district court. Determinations of effective waiver, voluntariness, and the like, are routinely made in various contexts such as the taking of guilty pleas under Rule 11, *see, e.g., United States v. Carter, supra*, 619 F.2d at 299, and rulings with respect to confessions, *see, e.g., Sims v. Georgia*, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967). We can expect no less of an inquiry here.

Even at this late stage, we are unable to determine whether Welty truly understood the consequences of dismissing Pedicini and electing to represent himself. It is possible that had a more searching inquiry been made, and had the dangers and disadvantages of self-representation been spelled out in detail, Welty might not have chosen to proceed *pro se*. Such a possibility is suggested by the fact that after spending a full day as his own attorney, Welty changed his mind as to the wisdom of his earlier decision, and sought to have counsel reappointed.[3] Indeed, after the jury handed down its

---

2. Welty appeared *pro se* in *United States v. Welty*, 330 F.Supp. 699 (E.D.Pa.1971) (§ 2255 petition), and *United States v. Welty*, 468 F.2d 594 (3d Cir. 1972). He was represented by a public defender in *United States v. Welty*, 287 F.Supp. 580 (E.D.Pa.1968), and by private counsel in *United States v. Welty*, 426 F.2d 615 (3d Cir. 1970). Welty had been convicted twice previously of bank robbery and once of burglary and theft; a conviction on a conspiracy charge had been dismissed; and he had been tried and acquitted on a Hobbs Act charge of extortion, conspiracy, and obstruction of investigation. *See* Supp.App. at 21–23; Appellee's Brief at 22–23.

3. When Welty sought reappointment of counsel at the start of the third day of the trial, the court took the position that once having waived his right to counsel, Welty could not later reclaim it, but would have to suffer any

verdict, Welty, realizing the need for the assistance of counsel at sentencing, engaged Pedicini for this purpose.[4]

■ In sum, absent any inquiry by the district court into whether Welty truly understood the implications of proceeding *pro se*, we have no way of assessing whether Welty's decision to represent himself was made knowingly and intelligently. Keeping in mind that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson v. Zerbst, supra*, 304 U.S. at 464, 58 S.Ct. at 1023 (footnote omitted), we conclude that Welty did not effectively waive his sixth amendment right to counsel in this case.

> and all adverse consequences of his ill-conceived decision to represent himself:
>
> MR. WELTY: ... I'd like to make a motion to you for assistance to [sic] effective counsel.
>
> THE COURT: What now?
>
> MR. WELTY: I would like to make a motion to his Honor for the assistance of effective counsel.
>
> THE COURT: You had one here the other day and you fired him.
>
> MR. WELTY: Your Honor, at that time, I don't know, I think his Honor was very upset.
>
> THE COURT: Mr. Welty, motion denied.
>
> Mr. Welty, you listen to me. You are an experienced litigant, you've done time for bank robbery. There are four reported opinions in Federal 2nd and Federal Supplement about you. There probably are more than that I haven't found yet. I know what you're trying to do and you're not going to get away with it. You're trying to set me up. You're trying to wiggle your way out of this thing because you know what's going to happen to you if you're found guilty in this case.
>
> Now, you're doing it in a very stupid way. You stood here and fired a very competent lawyer trying to try your case. Now you're coming back and trying to blame me for depriving you of effective assistance of counsel. You're trying to get me in error in the Court of Appeals and I guarantee one thing, sir, you're not going to do it.
>
> You made this bed, my friend, and you're going to lie in it.
>
> I am not wasting a lawyer's time to sit around here and hold your hand. If you wanted a lawyer, my friend, you had one here on Monday that I know quite well is very capable.

## IV.

This case is quite different from this court's recent decision in *United States v. McFadden, supra*. In *McFadden*, we found no sixth amendment violation where the defendant elected to proceed *pro se* after having had irreconcilable differences with the two successive lawyers that had been appointed to represent him. After the defendant fired his second appointed counsel and indicated a desire to represent himself, the district court granted that counsel's motion to withdraw from the case and declined to delay the trial to allow the appointment of a third counsel.

*McFadden* differs from the instant case in a number of crucial respects. First, in

> Now, you made this bed, you wanted to be your own lawyer, you wanted to play at it, you do it. I'm not helping you.
>
> MR. WELTY: Your Honor, the second motion would be for a mistrial due to the fact that I haven't had effective counsel.
>
> THE COURT: My friend, you have effective counsel in your own person. It's the choice you made. You fired a very competent young lawyer. You stay here and you try this case.
>
> MR. WELTY: Your Honor, I don't think you understand the circumstances between—
>
> THE COURT: I understand what you're trying to do. You think you're clever, you're not. And you're not going to get away with it. The subject is closed, sir.
>
> You stay here, you try this case. You made your own bed, you lie in it. And, my friend, you be here on time and you do what I tell you to do. You're going to have a lot of trouble with me, I'm a tough guy to have trouble with. You're street smart and prison wise, my friend, and you're not going to import that kind of conduct into this court.
>
> You want a lawyer, you had your chance Monday to have one. You think I'm going to kowtow and bend around corners for you?
>
> MR. WELTY: Could I have a Federal Book of Criminal Procedure, your Honor?
>
> THE COURT: Here. You can borrow mine.
>
> MR. WELTY: Thank you, your Honor.
>
> THE COURT: Jail house lawyers, I'm tired of them.
>
> Def.App. at 13–15.

4. The record is unclear as to whether Pedicini was reassigned as a public defender or privately retained by Welty for the sentencing proceeding.

*McFadden* the district court judge conducted an extensive inquiry into the nature of the defendant's problems with his counsel, in contrast to the character of the questioning by the district court judge in Welty's case. Second, McFadden had been afforded the services of two lawyers, but had consistently rejected their advice and threatened to sue them if they did not follow his instructions. Third, at the time McFadden sought new counsel, the permissible time for trial under the Speedy Trial Act was about to expire. Fourth, after McFadden's second counsel was allowed to withdraw, McFadden was given access to prosecution materials and granted a two-day continuance of the trial to allow him to familiarize himself with them. Finally, and perhaps most important, the court in *McFadden*, unlike the court in the instant case, appointed a third lawyer to serve as standby counsel for the defendant while the defendant proceeded *pro se*. That lawyer sat at the counsel table with McFadden, was available to give McFadden any legal advice he needed, examined McFadden when he took the stand, and made opening and closing statements on McFadden's behalf. 630 F.2d at 969 & nn. 11–12.[5] Thus, *McFadden*, which represents the furthest that this court has gone in upholding a defendant's waiver of counsel, provides no authority for the actions taken by the district court in Welty's case.

## V.

In holding that Welty's sixth amendment rights were not adequately protected in this case, we recognize the difficulties confronting a district court judge when he suspects a defendant is attempting to disrupt the administration of justice by manipulative requests for, and dismissals of, counsel. Indeed, in addressing this problem in *McFadden* we said that a defendant is "not entitled to employ complaints against counsel as a dilatory tactic in order to postpone

**5.** Here, despite the fact that Pedicini was present and fully prepared for the trial, the district court judge did not ask him to serve as standby counsel in case Welty later changed his mind about representing himself and desired reappointment of counsel. The Supreme Court has suggested that a judge "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S.Ct. 2525, 2541 n.46, 45 L.Ed.2d 562 (1975). Standard 6–3.7 of the ABA Standards of Criminal Justice, The Trial Judge's Function (2d ed. 1980), provides:

> When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon and to call the judge's attention to matters favorable to the accused upon which the judge should rule on his or her motion. Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants.

The Commentary on the Standard goes on to state that "in all but the simplest trials, and even in those if availability of counsel permits, the court should ordinarily appoint standby counsel to assist the accused if and when called upon and to perform the limited independent role contemplated by this standard."

Although it was not argued, and we do not hold, that appointment of standby counsel is constitutionally required, and we do not at this time require such counsel as an exercise of our supervisory power, we stress that appointment of standby counsel is the prudent course to take when a defendant elects to proceed *pro se*. A number of courts have appointed or offered to appoint standby counsel in self-representation situations. *See, e.g., Wilks v. Israel*, 627 F.2d 32, 34 (7th Cir. 1980); *United States v. Davis*, 604 F.2d 474, 482 (7th Cir. 1979); *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 133 (2d Cir. 1975), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976); *United States v. Rosenthal*, 470 F.2d 837, 845 (2d Cir. 1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973); *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1212 (3d Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). Indeed, one district court has gone so far as to provide for standby "general counsel." In *United States v. Bendetti*, 498 F.Supp. 450 (D.N.J.1980), three defendants wished to be represented by a single attorney but the court was not satisfied that each had knowingly and intelligently waived his right to be represented by his own, independent, lawyer. The court directed that each defendant be separately represented at trial but permitted the common attorney desired by the defendants to act at trial as a "general counsel" to the defendants' individual lawyers.

trial, raise a Speedy Trial Act claim, or await possible death or unavailability of prosecution witnesses . . . ." *United States v. McFadden, supra,* 630 F.2d at 972. *See also Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981); *United States v. Fowler,* 605 F.2d 181, 183 (5th Cir. 1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980); *United States ex rel. Davis v. McMann,* 386 F.2d 611, 618–19 (2d Cir. 1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968). Nevertheless, despite the difficulties presented by litigants in the position of McFadden on the one hand, and Welty here, a judge conducting a trial must—despite his suspicions as to the defendant's motives—at all times make certain that he has protected the defendant's constitutional rights.

It is the trial judge who is assigned the ultimate responsibility for thwarting transparent and manipulative tactics of the defendant while at the same time ensuring that there is good cause for the defendant's complaints about counsel and that the defendant's waiver of counsel is voluntary. In this case, unfortunately, that responsibility was not discharged. Because this record does not disclose that Welty effectively waived his constitutional right to counsel, we are obliged to reverse his conviction.[6]

### VI.

The judgment will be reversed and the case remanded for a new trial.[7]

---

**6.** Although Welty conducted a substantial defense on his own, making motions and cross-examining Government witnesses, and undoubtedly benefited from the defense conducted by counsel for his co-defendant, we do not believe a harmless error analysis is appropriate in this case. The right to counsel is among those "constitutional rights [which are] so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California,* 386 U.S. 18, 23 & n.8, 87 S.Ct. 824, 828 & n.8, 17 L.Ed.2d 705 (1967); *accord, Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978); *United States v. Laura,* 607 F.2d 52, 58 (3d Cir. 1979).

**7.** Because of our disposition of the case, we need not reach and do not decide Welty's claim that the trial court failed to take adequate measures to prevent jury prejudice and confusion resulting from Welty's dual role as defendant and counsel.