IN THE SUPREME COURT OF THE STATE OF DELAWARE

JAMEEL MUHAMMAD, §
§ No. 7, 2020
Defendant Below, §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ Cr. ID. Nos: 1904007225(N)
STATE OF DELAWARE, § 1905000605(N)
§ 1905000911(N)
Appellee. §

Submitted: November 17, 2021
Decided: January 20, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en banc*.

**O R D E R**

This 20th day of January, 2022, the Court has considered the parties' briefs, the record on appeal, and the argument of counsel, and it appears that:

(1)    In this criminal appeal, Jameel Muhammad, who entered guilty pleas and was sentenced with the assistance of an Office of Defense Services ("ODS") lawyer, contends that the Superior Court violated his right to self-representation by forcing him to utilize the ODS lawyer despite his earlier knowing, intelligent, and voluntary waiver of his right to counsel.

(2)    In the summer of 2019, a New Castle County grand jury returned two indictments charging Muhammad with eight felonies and two misdemeanors.

(3)     In the first indictment, Muhammad was charged with two counts of human trafficking and two counts of forced sexual servitude.  This order refers to the first indictment as the "Trafficking Case."  Muhammad's arrest in this case followed statements to police by two individuals who admitted that they worked as prostitutes under Muhammad's supervision and control.  One of the reporting individuals alleged that Muhammad would beat her if she did not make a specified amount of money for him on a daily basis.  If convicted on all counts under this indictment, Muhammad faced 100 years of Level V incarceration, eight of which would have been mandatory—that is, they could not be suspended.

(4)     In the second indictment, Muhammad was charged with numerous drug offenses, including three counts of drug dealing.  This order  refers to the second indictment as the "Drug Cases."  Under those counts, the indictment alleged that Muhammad possessed with intent to deliver 20 grams or more of cocaine on April 10, 2019, and that, on May 2, 2019, he possessed with intent to deliver methamphetamine and cocaine.

(5)     Muhammad was arrested for the April offenses after police officers encountered him in a motel room in Newark, Delaware.  A search of that room uncovered, among other things, $3,164.00 in United State currency, crack cocaine, marijuana, and paraphernalia typically used to smoke crack cocaine and package heroin.

2

(6)     The May charges were the product of a controlled purchase the police had arranged with the assistance of a confidential informant.  When Muhammad arrived where the transaction was to occur, the police arrested him, finding methamphetamine in his lap and a large amount of cash on his person.  A search of Muhammad's sport utility vehicle uncovered two bags containing crack cocaine.

(7)     If convicted on all counts in the Drug Cases, Muhammad faced 42 years of Level V incarceration, two of which would have been mandatory.  Thus, if convicted on all counts under both indictments, Muhammad faced 142 years of Level V incarceration, and ten of those years would have been mandatory.

(8)     Muhammad was on probation when he was arrested in April and May of 2019.

(9)     Before the indictments were filed, and in particular when Muhammad's cases were pending in the Court of Common Pleas for preliminary-hearing purposes, Muhammad made it known that he was not pleased with the ODS lawyer assigned to his case.  In this Order, we refer to the ODS lawyer as Trial Counsel.  In fact, when Muhammad appeared in the Court of Common Pleas for his preliminary hearing on the drug charges arising from his April arrest, the Court of Common Pleas "released" Trial Counsel from representing Muhammad at that stage of the

proceedings[1] and told Muhammad that he would either have to hire private counsel or represent himself.[2]

(10)    Two days after the indictment in the Drug Cases was filed, Trial Counsel filed a motion to withdraw as counsel in the Superior Court, but only as to the Trafficking Cases.   In the motion, Trial Counsel advised the court that Muhammad had "expressed to the Court of Common Pleas, to Counsel, and to Counsel's supervisors that [Muhammad] wishes [Trial Counsel] to be removed from this case."[3]

(11)    At the outset of the hearing on Trial Counsel's motion to withdraw, Muhammad told the court that "he did not necessarily want to represent himself, but rather he did not wish Trial Counsel to represent him."[4]   This theme—that Muhammad would prefer to be represented by counsel, just not Trial Counsel—recurs throughout the relevant interactions between Muhammad and the trial court.

(12)    The Superior Court then conducted a colloquy with Muhammad to determine whether Muhammad was knowingly and intelligently waiving his right to counsel.  It is undisputed that this colloquy satisfactorily adhered to the guidelines

---

[1] App. to Opening Br. at A116.
[2] *Id*. at A115.
[3] *Id.* at A237.
[4] Opening Br. at 15.  App. to Opening Br. at A242–243 ("This is my first time being heard, and I never stated that I want to go *pro se* in my preliminary hearing phase under another jurisdiction.  I stated that I would go *pro se* if I couldn't get proper representation or whatever.")

4

this Court adopted in *Briscoe v. State*[5] for determining whether a defendant is knowingly and intelligently waiving his Sixth Amendment right to counsel. Satisfied with Muhammad's responses during the colloquy, the court concluded that Muhammad had knowingly, voluntarily, and intelligently waived his right to counsel and granted Trial Counsel's motion to withdraw.

(13) At this juncture, therefore, Muhammad was proceeding *pro se* as to the Trafficking Case, but was still represented by Trial Counsel in the Drug Cases. That Trial Counsel still represented Muhammad in the Drug Cases was confirmed by Trial Counsel's September 16, 2019 letter to the court stating that, despite a recently filed federal lawsuit in which Muhammad had named Trial Counsel as a defendant—a stratagem apparently designed to create a conflict of interest so that other counsel would be assigned to Muhammad's case—"it [was] not [ODS's] intention to re-assign or declare a conflict[]"[6] in the Drug Cases.

---

[5] *Briscoe v. State*, 606 A.2d 103, 106 (Del. 1992) (adopting guidelines enunciated by the United States Court of Appeals for the Third Circuit in *United States v. Welty*, 674 F.2d 185 (3d Cir. 1982). Under the *Briscoe/Welty* guidelines, the trial court should advise the defendant: (1) that the defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar; (2) that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; (3) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused; (4) the nature of the charges; (5) the statutory offenses included within them; (6) the range of allowable punishments thereunder; (7) possible defenses to the charges and circumstances in mitigation thereof; and (8) all other facts essential to a broad understanding of the whole matter.
[6] App to Opening Br. at A260.

(14) On October 8, 2019, Muhammad was arraigned in both the Trafficking Case and the Drug Cases. The record is not clear as to whether Trial Counsel attended the arraignment, but we must assume that, if he did, his appearance was limited to the Drug Cases, his motion to withdraw from the Trafficking Case having been previously granted. It is clear, however, that as of the October 8 arraignment the Superior Court was confused regarding the status of Muhammad's representation—a confusion that was caused in no small part by Muhammad's equivocation.

(15) On the day before the arraignment, a Superior Court judicial case manager reported to the Commissioner assigned to Muhammad's arraignment:

> I believe it was at the 9/12 9am calendar that he stated that he never wanted to go pro se so he was scheduled for tomorrow's calendar.

> This is all so confusing and back and forth.

> Sounds to me like he originally may have stated a few times that he wanted to go pro se however, he's now saying that was "only because the PD's office wouldn't give him a different attorney" If he had been given another attorney, he wouldn't want to proceed pro se.[7]

(16) Muhammad contributed further to the uncertainty surrounding his purported waiver of his right to counsel when he filed a *pro se* motion in the Drug Cases, dated October 11 and docketed on October 17, 2019, alleging, among other

---

[7] Email from Lori D. Lavallee, Judicial Case Manager, to Commissioner Lynn M. Parker, Oct. 7, 2019, 4:22 PM. This email is part of the Superior Court record but is not reflected in the Court's docket entries.

6

things, that the courts were "forcing [him] to go pro se, for which [he] never expressed any wishes to represent [himself]."[8] Muhammad also claims in this motion that he had stated on the record during the hearing on Trial Counsel's motion to withdraw that he did not want to represent himself "since that was the only choice given"[9] and had "reasserted [his] right to assistance of conflict free counsel."[10]

(17) At a November 14, 2019 hearing the Superior Court addressed Muhammad's pending motions, including the one in which he was asserting that he was entitled to the appointment of counsel. After considering an unrelated issue, the court turned to Muhammad's Sixth Amendment claim, explaining that it understood—consistently with what he had said in his *pro se* motion—that Muhammad was complaining that he was being forced to represent himself.[11] Muhammad did not contest this characterization of his claim. The court did not, however, resolve Muhammad's complaint; instead, the court deferred considering it so that Muhammad could confer with Trial Counsel during what the court described as a "cooling-off period."[12]

(18) On November 19, 2019, in the midst of this confusion—and, perhaps, because of it—the Superior Court Criminal Administrative Judge who had presided

---

[8] App. to Opening Br. at A263.
[9] *Id.* at A262.
[10] *Id.*
[11] *See id.* at A331 ("The last point you had in your papers was . . . a Sixth Amendment violation, that you were being forced to represent yourself. Right?")
[12] *Id.* at A337.

over a case review in Muhammad's Trafficking Case that day entered scheduling orders and assigned both of Muhammad's cases to the same judge who was considering Muhammad's Sixth Amendment claim in the Drug Cases "for all purposes including trial."[13] The assignment letters provided that "[the] [f]irst case review to ensure the defendant has received discovery is set for December 2, 2019. Final case review for all three cases is set to be held on January 6, 2020, and trial for them is scheduled for January 22, 2020."[14]

(19) In light of Muhammad's October filing in which he raised Sixth Amendment concerns, during the December 2 case review covering the Trafficking Case and the Drug Cases the newly assigned judge sought to clarify whether Muhammad still wished to represent himself. As part of its review of the history of Muhammad's cases and the status of his representation by counsel, the court reminded Muhammad that, at an earlier hearing, it had engaged in a colloquy during which Muhammad said that he was "willing to represent [himself]."[15] Muhammad disagreed, stating: "I said on the record that I didn't want to represent myself."[16] When the court questioned the accuracy of Muhammad's memory, Muhammad stood firm, stating: "I said [it] clear, I said I don't want to represent myself, but if

---

[13] *State v. Muhammad*, No. 1904007225(N), D.I. #22; *State v. Muhammad*, No. 1905000605(N), D.I. #19.
[14] *Id.*
[15] App. to Opening Br. at 385.
[16] *Id.*

8

I'm being forced, I'd rather hang myself than have somebody else hang me, that's what I said."[17]

(20) In light of Muhammad's responses and the pendency of his motion, the court advised Muhammad:

> THE COURT: . . . So what we're going to do now is determine whether you're going to represent yourself or not, all right?
>
> MUHAMMAD: Okay. So we're going to want to address that?[18]

The court then began a colloquy with Muhammad:

> THE COURT: You understand in the three cases, case numbers ending 7255, 0605, and 0911, that you'll have to conduct your defense in accordance with the rules of evidence and criminal procedure, correct?
>
> MUHAMMAD: I don't understand.
>
> THE COURT: Okay. If you were to represent yourself, you'd have to adhere to the rules of evidence, you understand that? Yes or no?
>
> MUHAMMAD: I don't understand.
>
> THE COURT: Okay. If you were to represent yourself, you'd have to adhere to the rules of evidence, you understand that? Yes or no?
>
> MUHAMMAD: No, I don't understand.
>
> THE COURT: Okay. The nature of the charges against you, do you understand those?
>
> MUHAMMAD: No. I don't even know what charges I have. . . .[19]

---

[17] *Id.* at A385-86.
[18] *Id.* at A387.
[19] *Id.* at A388–89.

Muhammad then provided a bewildering explanation of his confusion based on "fake case numbers"[20] and counts in the two indictments that were not identical to the original charges upon which he was arrested.

(21) Based on this history and Muhammad's responses during this colloquy, the trial judge concluded that he could not "in good conscience find that [Muhammad was] competent to represent [him]self"[21] and ordered Trial Counsel to represent him in all pending matters.

(22) In the interim between the December 2 case review and Muhammad's final case review, which was scheduled for January 6, 2020, Trial Counsel filed a motion for leave to file out of time a motion to suppress evidence. Leave was granted, and the motion, which challenged the April 2019 search of the Newark motel room and a related vehicle search as well as the questioning of Muhammad in violation of *Miranda v. Arizona*,[22] was filed. The motion to suppress was pending at the time of Muhammad's January 6, 2020 final case review.

(23) At the final case review, Muhammad, with the assistance of Trial Counsel, entered into a plea agreement with the State to resolve the Trafficking Case and the Drug Cases. In accordance with the agreement, Muhammad entered pleas of guilty to one count of Tier 2 drug dealing (cocaine) (as a lesser-included offense

---

[20] *Id*. at A389.
[21] *Id*. at A390.
[22] *Miranda v. Arizona*, 384 U.S. 436 (1966).

to Tier 4 drug dealing); one count of drug dealing (methamphetamine with no tier level); and second-degree promoting prostitution (as a lesser-included offense of trafficking an individual). In exchange for his guilty pleas, the State agreed to enter a *nolle prosequi* on the remaining charges in Muhammad's cases.

(24) Before accepting Muhammad's plea, the court heard from Trial Counsel who reported that he had reviewed the facts of the case and the terms of the plea agreement with Muhammad, who, in Trial Counsel's opinion, understood the constitutional rights that he was giving up by entering the guilty pleas. Trial counsel also stated his belief that Muhammad was entering the pleas knowingly, intelligently, and voluntarily.

(25) The court then addressed Muhammad, who confirmed that he had freely and voluntarily decided to plead guilty to the charges identified in his written plea agreement. Muhammad further confirmed that he understood the penalties he was facing if the court accepted his pleas and that no one had threatened him or made any promises to him to induce him to offer the guilty pleas. He also acknowledged that he understood that, by entering the guilty pleas, he would be giving up the constitutional rights that were specifically enumerated on the written guilty-plea form he had signed along with his plea agreement.[23]

---

[23] The constitutional rights listed on the Truth-in-Sentencing Guilty Plea Form are (1) the right to have a lawyer represent you at trial; (2) the right to be presumed innocent until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt; (3) the right to a

(26) The court then accepted Muhammad's pleas and acceded to the State's and Muhammad's joint recommendation of immediate sentencing and an aggregate sentence of 10 years of Level V incarceration, with all but 16 months of that time suspended and with credit for time served. Muhammad then appealed.

(27) On appeal, Muhammad contends that the Superior Court erred when it revisited his prior waiver of counsel in the Trafficking Case—a waiver the court accepted after due inquiry—despite his later statements in his *pro se* filings and in open court claiming that he was entitled to the appointment of counsel in the Drug Cases and, more generally, that he never said he wanted to represent himself. According to Muhammad, by revisiting the waiver in the Trafficking Case and finding no waiver in the Drug Cases, the Superior Court violated Muhammad's constitutional right to self-representation and forced him to use Trial Counsel despite the prior waiver. We review claims involving the violation of constitutional rights *de novo*.

(28) This Court has recognized that "[a] defendant has the right to self-representation under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution."[24] This right, however, "may only

---

speedy and public trial by jury; (4) the right to hear and question the witnesses against you; (5) the right to present evidence in your defense; (6) the right to testify or not testify yourself; and, (7) the right to appeal, if convicted, to the Delaware Supreme Court with assistance of a lawyer.

[24] *Merritt v. State*, 12 A. 3d 1154, 2011 WL 285097, at *3 (Del. Jan. 27, 2011) (TABLE) (citing *Faretta v. California*, 422 U.S. 806, 807 (1975)).

12

be invoked when the defendant has made a knowing and intelligent waiver of the right to counsel and the record must show that the defendant has clearly and unequivocally made his choice."[25]   As previously noted, when a trial court is confronted with a defendant's request to proceed *pro se*, it must engage in a *Briscoe/Welty* colloquy with the defendant to ensure that the defendant's waiver of his right to counsel is knowing and intelligent.[26]

(29)   Here, the record is devoid of any support for Muhammad's claim that he knowingly and intelligently waived his right to counsel in the Drug Cases, nor does it show that he made a clear and unequivocal choice to do so.  Muhammad's appellate counsel acknowledged as much at oral argument in this Court.  And what is more, Muhammad's appellate counsel recognized that, had Muhammad proceeded to trial without counsel in the Drug Cases and been convicted, he would have had a valid claim that he was deprived of his Sixth Amendment right to counsel *because there had been no Briscoe/Welty colloquy*.[27]   It follows, then, that the trial court's

---

[25] *Hooks v. State*, 416 A.2d 189, 197 (Del. 1980).

[26] See ¶ 12, *supra*, and n. 5.

[27]   THE COURT:  Let's say [Muhammad] did go to trial by himself to preserve this appeal. Given what you said about the state of the record on the drug charges, would he have a valid claim that he was deprived of the right to counsel because there had not been a *Briscoe* colloquy as to the drug charges?
COUNSEL:  If we assume that there was no full *Briscoe* colloquy at the arraignment calendars with the Commissioner, then yes.
THE COURT:  Well, there's no record of it.
COUNSEL:  There's no record of it.
Oral Argument at 17:15–17:41, *Muhammad v. State* (No. 7, 2020), https://livestream.com/accounts/5969852/events/9878250/videos/227484941.

decision that Muhammad should be represented by counsel in the Drug Cases did not violate his Sixth Amendment rights; to the contrary, it preserved them.

(30)    The Trafficking Case presents a different scenario because the Superior Court had conducted a full *Briscoe/Welty* colloquy with Muhammad, as a result of which it concluded that Muhammad had knowingly, voluntarily, and intelligently waived his right to counsel. Consequently, Muhammad contends that, because he did not engage in serious and obstructionist conduct after the court accepted his waiver, the court should not have "terminated"[28] his self-representation in the Trafficking Case.

(31)    Muhammad's argument misses the point. The Superior Court did not revisit Muhammad's waiver of his right to counsel because of his behavior; it did so because Muhammad himself re-invoked his right to counsel after the waiver and two and a half months before his scheduled trial. In the *pro se* motion Muhammad drafted within three days of his arraignment in the Drug Cases and the Trafficking Case, Muhammad described the arraignment as "the courts seventeenth attempt at forcing me to go pro se for which I never expressed any wishes to represent myself."[29]    In that same motion, Muhammad expressed his concern that the Commissioner who presided at the arraignment "said she will ignore my right to

---

[28] Opening Br. at 49.
[29] App. to Opening Br. at A263.

14

assistance of counsel."[30]   Elsewhere in the motion, Muhammad explained:   "I reasserted I would like to exercise my right to counsel."[31]

(32)   In light of these statements, it is understandable that at the December 2 case review, the specially assigned trial court judge would revisit the propriety of Muhammad continuing to represent himself, including in the Trafficking Case. Indeed, as we view the record, Muhammad invited the court to reconsider his prior waiver.  And when that happened on December 2, Muhammad's statements to the court that he did not understand the nature of the charges he faced or the rules of evidence and criminal procedure by which he would be required to abide if he proceeded *pro se* justified the court's re-appointment of counsel.

(33)   Subsequent events vindicated the Superior Court's reappointment of counsel.  As mentioned above, the re-engaged Trial Counsel filed a motion to suppress on Muhammad's behalf—a move ostensibly designed to gain bargaining leverage at the final case review scheduled for January 6, 2020.  And at that case review, Trial Counsel negotiated a plea agreement, which, according to the court's factual findings, Muhammad accepted knowingly, intelligently, and voluntarily. More to the point of Muhammad's present claim, he told the court that he was—at last—satisfied with Trial Counsel's representation of him.

---

[30] *Id.* at A265.

[31] *Id*. at A264.  It is unclear when Muhammad claims to have reasserted his right to counsel, but a fair reading of his *pro se* motion suggests that it occurred at his arraignment.

15

(34) The State contends—and there is considerable persuasive force to its argument—that Muhammad's guilty pleas operate as a waiver of his right to self-representation. Pointing to a split of authority in the federal circuit courts of appeal on this issue, Muhammad counters that the deprivation of the right to self-representation is a structural error and, therefore, not subject to waiver. Muhammad also points to an arguably analogous United States Supreme Court decision—*Class v. United States*[32]—which considered the types of constitutional claims that are waived when a defendant pleads guilty, in his effort to defeat the State's waiver argument. Because Muhammad never waived his right to counsel in the Drug Cases and himself called into question the validity of his waiver in the Trafficking Case, thus justifying the court's re-evaluation of it and consequent reappointment of counsel, we need not address whether Muhammad's pleas effected a waiver.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[32] *Class v. United States*, __ U.S. __, 138 S. Ct. 798 (2018)

16