IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ERIC FRY, | § | |
| | § | Nos. 86 & 87, 2025 (Consol.) |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE | § | Cr. Id. No. 2212003817 |
| | § | Cr. Id. No. 2312008495 |
| Appellee. | § | |

Submitted: January 14, 2026
Decided: March 2, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **LEGROW**, Justices.

## ORDER

After consideration of the parties' briefs and the Superior Court record, it appears to the Court that:

(1) Eric Fry appeals his two convictions, arguing that the Superior Court failed to ensure a knowing and intelligent waiver of counsel.[1] The record shows that the court conducted a thorough colloquy, warned Fry of the risks of

---

[1] Fry does not contest the voluntariness of his waiver.

1

self-representation, and addressed nearly all of the *Briscoe/Welty* factors.[2]  We hold that Fry's waiver of counsel was knowing, intelligent, and voluntary, and we therefore affirm his convictions.

(2)     In December 2022, police arrested and charged Fry with various theft and burglary offenses.  The charges arose from incidents that occurred at an Auto Zone, Walmart, and Sparclean laundromat (the "Auto Zone Case").  Fry was released on bail and later failed to appear for his final case review.[3]

(3)     In December 2023, a year after the incidents in the Auto Zone Case, police charged Fry with burglary and other theft-related offenses.  The charges stemmed from an incident at a Shore Stop gas station (the "Shore Stop Case").[4]

(4)     When Fry appeared before the Superior Court in February 2024, he was facing charges in the Auto Zone, Shore Stop, and two other cases.  Fry rejected a global plea offer from the State because he was not happy with his counsel, and he

---

[2] The *Briscoe/Welty* factors include: "(1) that the defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar; (2) that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; (3) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused[;] (4) the nature of the charges[;] (5) the statutory offenses included within them[;] (6) the range of allowable punishments thereunder[;] (7) possible defenses to the charges and circumstances in mitigation thereof[;] and (8) all other facts essential to a broad understanding of the whole matter." *Briscoe v. State*, 606 A.2d 103, 108 (Del. 1992) (adopting the *Welty* factors as the applicable guidelines for determining whether a defendant's waiver of the Sixth Amendment right to counsel was knowing, voluntary, and intelligent) (citing *United States v. Welty*, 674 F.2d 185, 188–89 (3d Cir. 1982)).

[3] The charges for this incident (Case No. 86, 2025) are under Superior Court Case No. 2212003817.

[4] The charges for this incident (Case No. 87, 2025) are under Superior Court Case No. 2312008495.

asked the Superior Court to appoint new counsel to represent him. The Superior Court advised Fry that he did not have the right to choose his appointed counsel.

(5) On March 7, 2024, counsel submitted on Fry's behalf a Motion to Proceed *Pro Se* in all four pending cases. The Superior Court held a hearing on March 18, 2024, to consider the motion.[5] The Commissioner who presided at the hearing asked Fry a series of questions regarding his (i) knowledge of and participation in the legal system; (ii) education; (iii) awareness of the charges and penalties; (iv) appreciation of the potential punishments; (v) understanding of the required adherence to the laws and rules of the court; and (vi) knowledge of the inherent risks of proceeding without counsel. The court informed Fry that it would not act as his attorney and that he was responsible for his defense. The court did not identify the specific rules or statutes governing his case, nor did it address potential defenses or mitigating factors that Fry might raise. The Commissioner found on the record that Fry's waiver was knowing, intelligent, and voluntary,[6] and appointed Fry's attorney to remain as stand-by counsel.

---

[5]App. to Appellant's Opening Br. Case No. 86, 2025 [hereinafter "A__"] at A35 at 11:18–20 (Tr. Hr'g on Def. Mot. to Proceed *Pro Se*) ("We are here today to see if you want to represent yourself. That's the only reason why we're here today.").

[6] A47 at 23:16–19 (Tr. Hr'g on Def. Mot. to Proceed *Pro Se*) (finding that Fry "is knowingly intelligently agreeing to represent himself, and voluntarily, and he is waiving his right to his lawyer as to all of those issues.").

(6)    The first of Fry's cases to proceed to trial was the Auto Zone Case. In pretrial proceedings, Fry reaffirmed his desire to represent himself.[7] The assigned trial judge, Judge Brennan, reviewed Fry's waiver of counsel and noted that he had previously waived his right to counsel and was proceeding *pro se*, but she observed that the waiver form that Fry had signed listed incorrect charges.[8] When asked by Judge Brennan, Fry confirmed that his waiver was not based on the incorrect form but on the verbal explanation of his charges provided during the colloquy.[9]

(7)    On April 16, 2024, the Auto Zone Case went to trial. At the outset of the trial, Judge Brennan stated on the record that she had reviewed the March 18 colloquy and found that Fry properly waived his right to counsel.[10] After a two-day trial, the jury convicted Fry. Fry filed several motions and petitions between April 2024 and February 2025.[11] The Superior Court denied those motions and sentenced Fry, who then appealed his convictions to this Court under case No. 86, 2025.[12]

---

[7] *See* A55–61 (Tr. Hr'g on Def. Mot. to Dismiss for Lack of Speedy Trial); *see also* A62–107 (Tr. Pretrial Conf., Case No. 86, 2025).

[8] A62–69 (Tr. Pretrial Conf., Case No. 86, 2025).

[9] A69 at 8:11–23 (Tr. Pretrial Conf., Case No. 86, 2025).

[10] A112 at 5:1–21 (Tr. Trial Case No. 86, 2025).

[11] In the Auto Zone case, Fry filed a Motion for Judgment of Acquittal, Petition for Writ of Habeas Corpus, and a motion for a *Franks* hearing. *See* A366–447.

[12] Appellate Counsel was appointed on March 31, 2025, for Case No. 86, 2025 and April 1, 2025, for Case No. 87, 2025.

(8) Before the start of trial in the Shore Stop Case, Fry filed several motions and petitions, all of which were denied.[13] Less than two weeks before trial, Fry moved to have counsel appointed to represent him.[14] That motion was addressed by the trial judge, Judge Wharton, before the start of trial on November 18, 2024. Judge Wharton questioned Fry about his March waiver of counsel and his subsequent request to have counsel reappointed. Judge Wharton also reviewed the numerous motions that Fry had filed across his Superior Court cases, noting that some of the motions prompted the State to dismiss two of the cases. Judge Wharton then asked Fry why he was now seeking the appointment of counsel, and Fry responded that he "bit off a lot more than [he] could chew."[15]

(9) Judge Wharton advised Fry that his stand-by counsel could resume representation. Fry agreed, and stand-by counsel stated he would need a continuance until January to prepare. The State reported that it was ready for trial but did not oppose a continuance. Fry confirmed that he wanted stand-by counsel reappointed and indicated that he would consider a plea offer. The State noted that, given Fry's conviction in the Auto Zone Case, it would need time to evaluate any plea offer but

---

[13] Fry filed similar motions in the Shore Stop case, including a Motion to Suppress, Petition for Writ of Habeas Corpus, Motion to Dismiss for Lack of Speedy Trial, and a *Franks* Motion. *See* App. to Appellant's Opening Br. Case No. 87, 2025 [hereinafter "AA__"] at AA46–74.

[14] AA78–81 (Def's Mot. for Appointment of Couns.).

[15] AA87 at 6:19–21 (Tr. Trial Case No. 87, 2025).

was willing to engage in discussions if counsel was reappointed and the trial was continued. Judge Wharton informed Fry that the court could not predict the outcome of any plea negotiations and that no plea offer existed at that time.

(10)   Judge Wharton advised Fry that his options included requesting a continuance to permit stand-by counsel to prepare and engage in potential plea negotiations, proceeding to trial at a later date with stand-by counsel, or proceeding to trial that day. Fry stated that he did not wish to wait and said, "[w]e can just go to trial."[16] The court asked Fry if he wished to withdraw his motion to appoint counsel, and he replied, "[y]es, sir."[17] Fry withdrew his motion to appoint counsel, proceeded to trial, and ultimately was convicted by the jury. Fry was later sentenced in the Shore Stop Case and appealed to this Court under case No. 87, 2025.

## ANALYSIS

(11)   We review *de novo* whether a defendant's waiver of the right to counsel was knowing, intelligent, and voluntary.[18] Under both the United States and Delaware Constitutions, a criminal defendant has the right to counsel as well as a

---

[16] AA99 at 18:16 (Tr. Trial Case No. 87, 2025).

[17] *Id.* at 18:19–23 (Tr. Trial Case No. 87, 2025).

[18] *Smith v. State*, 996 A.2d 786, 790 (Del. 2010); *see also Boyer v. State*, 985 A.2d 389, 2009 WL 3841973, at *1 (Del. Nov. 16, 2009) (TABLE) ("It is well-established law that criminal defendants have a constitutional, Sixth Amendment right to waive counsel and continue *pro se* if they do so knowingly, intelligently, and voluntarily." (citing *Faretta v. California*, 422 U.S. 806, 835 (1975))).

6

corollary right to represent himself. Before allowing a defendant to represent himself,[19] the trial court must conduct a searching inquiry to ensure that the waiver of counsel is knowing, intelligent, and voluntary, and that the defendant understands the dangers and disadvantages of proceeding without counsel.[20] Although the *Briscoe/Welty* factors guide that inquiry,[21] a trial court is not required to expressly address every factor where the record as a whole demonstrates a knowing, intelligent, and voluntary waiver.[22]

(12) The Superior Court inquired several times into Fry's waiver. The Superior Court Commissioner conducted a lengthy waiver-of-counsel colloquy approximately one month before Fry's first trial. Despite moments of contentious exchange, the court questioned Fry regarding his understanding of the charges and

---

[19] *See Williams v. State*, 56 A.3d 1053, 1055 (Del. 2012) ("The right for a criminal defendant to proceed *pro se* is not absolute." (citing *Faretta*, 422 U.S. at 834 n.46)).

[20] *Muhammad v. State*, 271 A.3d 188, 2022 WL 178509, at *5 (Del. Jan. 20, 2022) (TABLE) ("[W]hen a trial court is confronted with a defendant's request to proceed *pro se*, it must engage in a *Briscoe/Welty* colloquy with the defendant to ensure that the defendant's waiver of his right to counsel is knowing and intelligent.").

[21] *Briscoe*, 606 A.2d at 107 ("The fact that an accused may tell the trial court that he is aware of his right to counsel, and desires to waive that right, does not eliminate the trial court's responsibility to conduct a 'searching inquiry.'" (citing *Welty*, 674 F.2d at 189)).

[22] *See Holland v. State*, 158 A.3d 452, 475 (Del. 2017) ("Although this Court's pronouncements on how to use the [*Briscoe/*]*Welty* factors in this context have been somewhat confusing, the more recent cases emphasize that not every factor has to be specifically addressed in each case. Instead, the [*Briscoe/*]*Welty* framework is a guide to use in addressing the Superior Court's ultimate objective here, which is ensuring defendants understand the repercussions and risks of their choice to proceed *pro se*.").

potential punishment, his educational background and experience in the criminal justice system, and the practical hazards of self-representation, including his obligation to follow courtroom rules and the court's inability to assist him as counsel. The Superior Court expressly addressed six of the eight *Briscoe/Welty* factors. The court impliedly addressed a seventh factor by advising Fry of the need to follow established court rules and applicable law. Fry repeatedly confirmed that he understood these risks and nonetheless wished to represent himself. The court appointed stand-by counsel and expressly found on the record that the waiver was knowing, intelligent, and voluntary.

(13) Both trial judges revisited and confirmed that conclusion. Before the Auto Zone trial, Judge Brennan reviewed Fry's prior colloquy, confirmed that he had not relied on an inaccurate waiver form, and again obtained Fry's affirmation that he wished to proceed *pro se*. Later, before the Shore Stop trial, Fry sought reappointment of counsel but withdrew that request after learning that counsel would require a continuance to prepare. Fry instead chose to proceed immediately to trial without counsel. In addition, Fry filed numerous motions across his cases—some resulting in the dismissal of charges—demonstrating his understanding of courtroom procedure and the consequences of self-representation.

(14) Although the colloquy did not expressly address potential defenses or mitigating circumstances, Delaware law does not require a mechanical recitation of

every *Briscoe/Welty* factor.[23]  The record as a whole shows that Fry understood the nature of the proceedings, the risks of self-representation, and the consequences of waiving counsel.  Under these circumstances, the Superior Court correctly determined that Fry knowingly, intelligently, and voluntarily waived his right to counsel.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[23] *See Holland*, 158 A.3d at 470 ("But, even when this Court has used relatively mandatory language, it has also observed that '[a] knowing and intelligent waiver can occur without reviewing each of the [*Briscoe*/]*Welty* factors.'"); *see also id.* (holding that the court is not required to "mechanically go through each of the [*Briscoe*/]*Welty* factors.") (citing *Hartman v. State*, 918 A.2d 1138, 1140–42 (Del. 2007)).